HEIFETZ and others, Respondents, v. JOHNSON and another, Appellants.

*No. 278. Argued October 2, 1973.—Decided November 12, 1973.* (Also reported in 211 N. W. 2d 834.)

For the appellants there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Steven J. Caulum* of Madison.

For the respondents there was a brief by *Fritschler, Pellino & Associates* of Madison, and oral argument by *Peter W. Zeeh* of Madison.

WILKIE, J.    Two issues are presented on this appeal:

(1) Did the failure of the plaintiffs to join a necessary or indispensable party within the period of limitations subject the plaintiffs' cause of action to the defense of limitation of actions?

(2) If the plaintiffs' right of action is not barred, can the defendants raise the prior payment of $2,000 by the plaintiffs' insurer in mitigation of their liability?

*Is plaintiffs' action barred by the statute of limitations?*

An action to recover damages for injury to the person must be brought within three years.[1]    The acceptance of payment from an insurer (Heritage here) operates as a virtual assignment of the cause of action to the insurer and a part payment operates as an assignment pro tanto.

[1] Sec. 893.205 (1), Stats.

The insurance company may bring suit against the tort-feasor in its own name by virtue of this assignment.[2] In Wisconsin a liability insurer so subrogated is considered an indispensable party.[3]

The trial court was correct in holding that the failure to join the subrogated insurer, Heritage, could not be corrected as to Heritage, for as to Heritage the statute of limitations had run.[4]

In Wisconsin the running of the statute of limitations extinguishes not only the right of action but also the cause of action.

" 'In Wisconsin the running of the statute of limitations absolutely extinguishes the cause of action for in Wisconsin limitations are not treated as statutes of repose. The limitation of actions is a right as well as a remedy, extinguishing the right on one side and creating a right on the other, which is as of high dignity as regards judicial remedies as any other right and it is a right which enjoys constitutional protection. . . .' " [5]

In *Haase v. Sawicki* it was held to violate a defendant's due process rights for the legislature to enact a statute attempting to extend a statute of limitations and have it apply to causes of action which were already barred by the former shorter period of limitations.

The real question in this case, however, is whether the cause of action of the plaintiff has also been extinguished. If the bringing of a suit without joining an indispensable party is so defective as not to constitute the commence-

[2] *Allen v. Chicago & Northwestern Ry.* (1896), 94 Wis. 93, 68 N. W. 873.

[3] *Patitucci v. Gerhardt* (1932), 206 Wis. 358, 240 N. W. 385.

[4] *Borde v. Hake* (1969), 44 Wis. 2d 22, 32, 170 N. W. 2d 768; *Ausen v. Moriarty* (1954), 268 Wis. 167, 173, 67 N. W. 2d 358; *Baker v. Tormey* (1932), 209 Wis. 627, 245 N. W. 652; 51 Am. Jur. 2d, *Limitation of Actions*, p. 790, sec. 243; 54 C. J. S., *Limitation of Actions*, p. 318, sec. 278.

[5] *Haase v. Sawicki* (1963), 20 Wis. 2d 308, 311, 312, 121 N. W. 2d 876, quoting from *Maryland Casualty Co. v. Beleznay* (1944), 245 Wis. 390, 393, 14 N. W. 2d 177.

ment of an action at all, then the statute of limitations would not have been tolled by service of process on October 12, 1971, and the plaintiff would be barred from suing the defendant.

The appellant relies on the recent Wisconsin case of *Borde v. Hake*.[6] It is very similar on its facts and ironically involves the same insurance company, Heritage Mutual Insurance Company. In *Borde,* the plaintiff had collision insurance from Heritage and made a claim which was paid. He assigned his claim to Heritage to the extent of the payment to him. The plaintiff then commenced an action for personal injuries, loss of use of his car, and for damages to the automobile not compensated by the insurer. This court held that Heritage, which was not joined, was an indispensable party but only to the action for property damage. This would allow the suit for personal injuries to continue in any event. The real issue in the case was whether the suit should have been ordered dismissed and recommenced or whether the plaintiff was correctly given twenty days in which to either join his insurer or get a release of the assignment. The defendant hoped that if the suit was dismissed it would be too late to recommence within the applicable three-year limitation period. This court affirmed the lower court's suspension rather than dismissal of the lawsuit to await the joinder of all indispensable parties. However, the court also indicated that since the order to join Heritage came after the running of the limitation period, it could not now be joined. And at an earlier point in the opinion the court had this to say about the original plaintiff:

"We conclude that, until such time as Heritage Mutual was joined, the plaintiff's cause of action brought without the joinder of a necessary party was wholly ineffectual to stop the running of the statute of limitations

---

[6] *Supra,* footnote 4.

on that claim. Moreover, the joinder of a necessary party subsequent to the running of the statute of limitations comes too late to cure the omission. *Ausen v. Moriarty* (1954), 268 Wis. 167, 173, 67 N. W. 2d 358.

"The plaintiff's brief argues that if the action has been commenced against one party prior to the running of limitations and the plaintiff inadvertently fails to join a necessary party as plaintiff or defendant, it would be inequitable to throw out the whole cause of action merely because the defect was not cured until it was too late to sue over within the period of limitations. We do not dispute the equities of the plaintiff's assertion. We point out that in *Haase v. Sawicki* (1963), 20 Wis. 2d 308, 121 N. W. 2d 876, this court concluded that, once a defendant was freed of potential liability by the running of a statute of limitations in a civil suit, the legislature could not retroactively extend that period of limitations, and that to do so would subject a defendant to liability without due process of law in violation of the Constitution of the United States." [7]

Respondents correctly point out that this statement was dicta in *Borde v. Hake*, for the defense of statute of limitations had not been pleaded by any of the parties therein.[8]

It is clear that an action must be commenced within the period limited by law. If the plaintiff commences his action in a court which completely lacks jurisdiction and then after the statute of limitations has run refiles in the proper court, the statute of limitations was not tolled by the first improper filing.[9] And if the wrong person is served, the pleadings cannot be "amended" to name the proper party for no service was had on him within the period limited by law.[10] Nor can a court acquire jurisdiction of an action by amending a process

---

[7] *Borde v. Hake, supra,* footnote 4, at page 31.

[8] *Id.* at page 32.

[9] *Osman v. Draskovich* (D. C. Wis. 1970), 314 Fed. Supp. 1115.

[10] *Ausen v. Moriarty* and *Baker v. Tormey, supra,* footnote 4.

in order to give it such jurisdiction.[11] Thus the question here is whether the failure to join a subrogated insurer is a defect of the magnitude of those above, so that in effect no action was commenced within the time limited by law.

There is a split in the authorities as to whether an objection to the lack of an indispensable party goes to the jurisdiction of the court.[12]

Typical of those cases which hold that the defect is jurisdictional is a New Mexico case, *Sellman v. Haddock*.[13] In that case the plaintiff, who had received a considerable sum from his own insurer for damage to his automobile, tried to sue the tort-feasor for the entire amount of damages. The court held that although there was considerable authority that this was permitted at common law, the statute requiring that every action be brought in the name of the real party in interest changed the common-law rights of the plaintiff. The insurer was held to be an indispensable party and the court concluded: "If the insurance carrier is an indispensable party, then the court was without jurisdiction and the situation is the same as if no attempt at a trial had been made." Thus the plaintiff was barred from prosecuting the action further.

But a Minnesota case quite persuasively argues that "in cases where there is error in the nonjoinder of necessary or indispensable parties courts have fallen into a common error by designating the defect as jurisdictional." In *Doerr v. Warner*,[14] the Minnesota court held that it acquired jurisdiction over the subject matter of

[11] *Rosenthal v. Rosenthal* (1961), 12 Wis. 2d 190, 107 N. W. 2d 204.

[12] 59 Am. Jur. 2d, *Parties*, pp. 724, 725, sec. 260, Nature of the objection to lack of indispensable or necessary party as dilatory only or as jurisdictional.

[13] (1957), 62 N. M. 391, 393, 310 Pac. 2d 1045.

[14] (1956), 247 Minn. 98, 103, 76 N. W. 2d 505.

an action despite the nonjoinder of indispensable parties until after the case had been removed to federal court and the statute of limitations had run. The court explained:

". . . As a general rule a civil action is commenced, and the court thereby acquires jurisdiction, when personal service upon the defendant is actually made as prescribed by statute or rule. Although an indispensable party to an action must be joined, and for the failure to join him the action must be dismissed since the adjudication cannot proceed to judgment without him, such defect is not jurisdictional. . . . It is well established that, although a court may not proceed to judgment in a case in which an indispensable party is absent, the reason therefor is not that the court does not have jurisdiction but for the broader reason that in the exercise of due process no court, regardless of its jurisdictional structure, may adjudicate directly upon a person's rights without such person being either actually or constructively before the court." [15]

There is a recognized exception where the statute of limitations is not suspended as against the original plaintiff, and that is where one of several joint owners brings an action and by amendment attempts to bring in the other joint owner or owners. The reason for this exception is that joint owners must sue jointly and neither can recover in an action in which he is the sole plaintiff. [16]

---

[15] *Id.* at pages 103, 104; *see also:* Annot. (1949), 8 A. L. R. 2d 6, 28, sec. 9. "Insofar as the original plaintiff is concerned the addition of a new party plaintiff does not set up a new cause of action upon which limitation runs to the time of the amendment and hence, as to him the running of the statute remains suspended from the time he commenced the action."

[16] Annot. (1949), 8 A. L. R. 2d 6, 31, sec. 11, *Limitation of rule;* 54 C. J. S., *Limitation of Actions,* p. 304, sec. 272: "The running of the statute of limitations is not stopped by the bringing of an action on a cause of action belonging to none of the parties, by only one of joint payees of a note, or in a capacity which is es-

Are an injured plaintiff and his subrogated insurer so analogous to joint owners that the above rule should be applied to them? We do not think so. The case of *Patitucci v. Gerhardt* [17] uses some language which might suggest to the contrary. There the court said:

". . . By operation of law the ownership of a part of this claim has become vested in the insurance company by reason of its payment of the loss. If this presents to the court a single controversy, it must be apparent that a complete determination of it cannot be had without the presence of all of the parties *who together own the cause of action.*" (Emphasis added.)

However, it can be seen that they are not really joint owners in the same sense as the joint payees of a note. Each actually owns separately a part of the liability of the tort-feasor. The insurer has a claim only for the money he paid to his insured and the insured by accepting payment has lost his right to demand payment of that sum from the tort-feasor. The insured can claim all other damages over and above that amount and the insurer has no claim to those damages. Thus it is better to think of the insurer as an assignee of part of the claim than to speak of the insured and the insurer as joint owners of the claim. The *Patitucci Case* also uses the description of the insurer's rights as an "assignment." The definition of subrogation given in American Jurisprudence is the " 'doctrine of substitution,' " and it later states that subrogation contemplates full substitution and places the party subrogated in the shoes of the creditor. [18]

sential to maintenance of the suit and which plaintiff claims to, but does not, have.

"On the other hand, a suit interrupts the running of the statute where it is brought by a person, or the only persons, entitled to sue, or by one of several cotenants, or, it has been held, notwithstanding plaintiff partnership erroneously sues as a corporation." *See also: Fishell v. Evans* (1927), 193 N. C. 660, 137 S. E. 865.

[17] *Supra*, footnote 3, at page 362.

[18] 50 Am. Jur., *Subrogation*, p. 678, sec. 2; p. 688, sec. 10.

"Substitution" implies the displacement of the original party and reinforces the conclusion that the insured and the subrogated insurer are not joint owners of any part of the claim against the tort-feasor, although an adjudication of the tort-feasor's total liability requires the presence of both of the co-owners of the claim as plaintiffs.

Earlier Wisconsin cases also support the position that failure to join an indispensable party is not a jurisdictional defect. In *E. L. Husting Co. v. Coca-Cola Co.*[19] the court reversed a dismissal of an action for lack of an indispensable party. The trial court viewed sec. 260.19, Stats. 1927, as mandatorily requiring the joinder of an absent party and because it could not be done the court held that the action must fail. The Wisconsin Supreme Court construed this statute, even though mandatorily and expressly requiring the courts to make some third person a party, to apply only to those parties who could be brought within the jurisdiction of the court. Thus the action could continue even though a necessary party defendant was in Texas and at that time beyond the reach of process. Thus this court did not view the lack of an indispensable party as a jurisdictional defect or as a violation of a constitutional due process right. The statute was only construed to require the possible. The joinder of indispensable parties was seen as a desirable goal of judicial administration and fairness to the defendant but not as preventing any action whatsoever if all indispensable parties are not joined.

In *Patitucci v. Gerhardt* [20] the court said that although it was the duty of a court to join an insurer as a party if it comes to the court's attention during the trial that the insurer is an indispensable party, the court did not "mean to intimate that such a cause of action might not properly proceed to judgment if the matter of insurance

[19] (1927), 194 Wis. 311, 216 N. W. 833.
[20] *Supra*, footnote 3, at page 363.

did not come to the attention of the court." The court suggested the defendant would not have to pay the insurer because it had paid the insured without knowledge or involuntarily and the insured would recover the amount and hold it as trustee for the insurer. If this court had considered the defect jurisdictional, the judgment would have been void because the action was not properly commenced. In *Patitucci,* since the interest of the insurer was discovered during the course of the trial, the court ordered that a new trial would be had unless the insurer filed a release of claim against the defendant or an assignment of its claim to the plaintiff.

And in *Leonard v. Bottomley* [21] the court allowed a judgment to stand when during the trial the insurer disclaimed any right of subrogation. The court said:

". . . This right to substitution may be abandoned or waived in favor of the insured as well as by assignment to others. Until it is so disposed of or waived, the one who may avail himself of this right ought to be a party to the litigation in which there cannot be a complete determination without the presence of all parties having claim to the cause of action."

The court further said:

". . . This disclaimer having been presented to the court during the trial, such error as may have theretofore existed lost its prejudicial quality. The tortfeasor was thus fully protected against any possibility of being compelled to pay more than once the damage caused by his act." [22]

We conclude that the Wisconsin Supreme Court has not viewed the requirement of joinder of indispensable parties as jurisdictional and any statement in *Borde v. Hake, supra,* to the contrary is withdrawn. The trial court was correct in concluding:

---

[21] (1933), 210 Wis. 411, 245 N. W. 849.

[22] *Id.* at page 417.

". . . It would seem that anything available as a complete defense to a claim of the insurer, should it seek to bring action against the defendants on its right of subrogation, should serve the purpose of either a release by the insurer of its claim against the defendants or assignment of its claim to the insured as suggested by *Patitucci* . . . and *Leonard* . . . ."

The respondents also persuasively argue that the purpose of the mandatory joinder statutes [23] is to protect the defendant against a multiplicity of suits and that the purpose is served when by operation of the statute of limitations the insurer is barred forever from any claim against the defendant. There is, in effect, no longer any lack of an indispensable party for the insurer no longer has any interest in the action.

It was well stated in *Bank of California v. Superior Court:* [24]

". . . Bearing in mind the fundamental purpose of the doctrine, we should, in dealing with 'necessary' and 'indispensable' parties, be careful to avoid converting a discretionary power or a rule of fairness in procedure into an arbitrary and burdensome requirement . . . ."

---

[23] "260.12 **Parties united in interest to be joined; class actions; alternative joinder.** Of the parties to the action those who are united in interest must be joined as plaintiffs or defendants; but if the consent of any one who should be joined as plaintiff cannot be obtained he may be made a defendant, the reason thereof being stated in the complaint; and when the question is one of a common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole. And when more than one person makes a separate claim for damage against the same person or persons based upon the same alleged tortious conduct, they may unite in prosecuting their claims in one action."

"260.13 **Real party in interest must prosecute.** Every action must be prosecuted in the name of the real party in interest except as otherwise provided in section 260.15."

[24] (1940), 16 Cal. 2d 516, 521, 106 Pac. 2d 879.

*Effect of Heritage's payment.*

The trial court indicated in its opinion denying summary judgment that it felt the defendants would have a defense to any claim by Heifetz that he has a right to receive the $2,000 paid by Heritage. We agree.

Acceptance of payment from an insurer operates as an assignment of the claim to that extent whether or not the policy contains a subrogation agreement.[25] The plaintiff loses his right to sue for any amount received from his insurer. Thus it would not matter whether the plaintiff in this case had signed a "subrogation receipt" or not. Heritage executed to the plaintiff a document denominated a "release." The trial court remarked on its ambiguities but did not construe it, because the trial court correctly decided that any suit by Heritage against the defendant was barred by limitation so that any release could have no legal effect. The release purported to "release all interests granted to them by the subrogation assignment and any claim of any kind which they have against the above-named Julius Jack Heifetz as a result of said payment." The only claim which they would apparently have against the plaintiff would be for his cooperation in prosecuting any action the insurance company might have instituted within the statutory period.

In Wisconsin the running of the statute of limitations not only bars recovery but it completely extinguishes the party's cause of action. Thus, Heritage would no longer have a right of subrogation which would entitle it to be reimbursed by the defendant tort-feasor. It would defeat the purpose of the statute of limitations to allow the plaintiff to recover the full amount of damages holding the first $2,000 in medical payments recovered in trust for Heritage. And since the doctrine of

---

[25] *Patitucci v. Gerhardt, supra,* footnote 3.

subrogation was designed in part to prevent double recovery by the plaintiff, the plaintiff should not be allowed to recover the full amount free of the subrogation claim of the insurer which was extinguished by the running of the statute of limitations against the subrogated insurer. This inures to the benefit of the defendant in this case, but that is the public policy expressed in statutes of limitation. Heritage must assert its claim within the period limited by law.

*By the Court.*—Order affirmed.