**Sheryn Kautz FIETZER, Plaintiff,**

v.

**FORD MOTOR COMPANY, Defendant.**

**Civ. A. No. 72–C–582.**

United States District Court,
E. D. Wisconsin.

Nov. 21, 1977.

Peter S. Nelson, Appleton, Wis., for plaintiff.

Walter L. Merten, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

The plaintiff suffered burn injuries in 1969 while operating a 1964 Mercury Comet automobile. A trial was had and the jury returned a special verdict finding the defendant Ford Motor Company 100% causally negligent in that such automobile was in a defective condition when it left the factory so as to make it unreasonably dangerous to its users. Judgment was entered in accordance with the verdict.

The plaintiff has moved to amend question 8(b) of the special verdict and the judgment to include as damages the medical expenses incurred by the plaintiff but paid by her insurer. The defendant has moved for a directed verdict, a judgment notwithstanding the verdict, or for a new trial. For the reasons hereinafter stated, the plaintiff's motion is granted and the defendant's motions are denied.

The defendant has challenged the verdict on a number of grounds falling into four general categories. First, the defendant contends it is entitled to a new trial on the ground that the verdict is against the weight of the evidence; second, that the court erred in instructing the jury; third, that the court erred in admitting and excluding certain evidence; and fourth, that plaintiff's counsel's opening and closing arguments were improper. The defendant raised its objections to the instructions, the evidentiary rulings, and the arguments during the course of the trial, and the Court reaffirms its rulings for the reasons stated therein. However, the defendant has raised new issues with respect to the weight of the evidence sustaining the verdict that merit discussion.

Essentially, the defendant contends that there was insufficient evidence to hold it 100% causally negligent with respect to the plaintiff's injuries, relying on the testimony regarding plaintiff's handling of her vehicle and the speed of the striking vehicle.

With respect to the speed of the striking vehicle, the record reflects testimony given by the plaintiff's expert that the fuel system of the 1964 Mercury Comet was negligently designed regardless of the speed of the striking vehicle. The expert made it clear that he was not saying that the fuel system should be designed to withstand impacts at a particular speed but, rather, that the fuel system design employed in the 1964 Mercury Comet was negligent whether the automobile was resting in the factory or struck from the rear by an automobile going 50 miles per hour. If the jury chose to believe the expert's testimony, the evidence with respect to the speed of the striking vehicle is irrelevant, and the verdict is not necessarily against the weight of that evidence.

With respect to the asserted negligence of the plaintiff, there is evidence that there was a dip in the road which could conceivably have obstructed the plaintiff's view of the oncoming automobile. Such testimony supports the jury verdict with respect to the lack of plaintiff's negligence.

The defendant further asserts that a letter written by a juror after the verdict was entered demonstrates that the verdict was against the weight of the evidence. What the defendant is apparently attempting to do is to impeach the verdict. Such letter is insufficient grounds to impeach the verdict and order a new trial.

The thrust of the letter is that the jury misunderstood the applicable law and felt that it had no choice but to find the defendant 100% negligent. The rule with respect to a juror's attempt to impeach the verdict by alleged misapprehensions or misapplications of the law is correctly stated in 6A Moore's Federal Practice ¶ 59.08[4] at 59–148 and 59–149 (2d ed. 1974), wherein it states:

"* * * While the rule may not be without exception, ordinarily, for the purpose of overthrowing a verdict, the testimony of jurors is incompetent to prove any matter that is inherent in the jury process of arriving at a verdict, and hence cannot be used to show: * * * misap-

prehension or misapplication of the law * * *."

Having addressed the defendant's motions, the Court will now turn to the plaintiff's motion to amend the judgment. The plaintiff contends that the Court erred in excluding from the award the medical expenses incurred by the plaintiff and paid for by her insurance company pursuant to an insurance policy that did not contain a subrogation provision. Such contention necessitates this Court's analysis of the Wisconsin Supreme Court's decision in *Heifetz v. Johnson*, 61 Wis.2d 111, 211 N.W.2d 834 (1973).

In *Heifetz*, the Wisconsin Supreme Court was faced with the issue of whether the plaintiffs' action was barred by the statute of limitations for failure to join an indispensable party. One of the plaintiffs, Julius Jack Heifetz, was injured in an automobile accident. His insurer paid $2,000 of his medical expenses and, in return, Heifetz executed a "subrogation receipt and assignment" to the insurer. The defendant contended on summary judgment that the insurer was an indispensable party and that the original plaintiffs' failure to join the insurer suspended the running of the statute of limitations as to all parties. The Court held that the insurer was an indispensable party and stated at 114–115, 211 N.W.2d at 836:

> " * * * The acceptance of payment from an insurer (Heritage here) operates as a virtual assignment of the cause of action to the insurer and a part payment operates as an assignment pro tanto. The insurance company may bring suit against the tort-feasor in its own name by virtue of this assignment. In Wisconsin a liability insurer so subrogated is considered an indispensable party."

However, such failure was held not to bar the original plaintiffs from bringing their claims because (1) the failure to join the indispensable party is not a jurisdictional defect, and the running of the statute of limitations as to the insurer extinguished its right to recover against the defendants for the amount of the medical payments; and (2) a subrogated insurer is an assignee rather than a joint owner of the claim and as

subrogee displaced the original party pro tanto.

Having determined that the plaintiffs' action was not barred by the statute of limitations, the Court, citing *Patitucci v. Gerhardt*, 206 Wis. 358, 240 N.W. 385 (1932), as authority, went on to say that the defendants would have a defense to any claim of Heifetz to the $2,000 in medical expenses paid by his insurer.

> "Acceptance of payment from an insurer operates as an assignment of the claim to that extent whether or not the policy contains a subrogation agreement. The plaintiff loses his right to sue for any amount received from his insurer. Thus it would not matter whether the plaintiff in this case had signed a 'subrogation receipt' or not. * * * " *Heifetz*, 61 Wis.2d at 124, 211 N.W.2d at 841.

It is this language with which the plaintiff takes issue.

The plaintiff contends that the Court is not bound by this statement in *Heifetz* because (1) it is dicta, and (2) prior to the dicta, under Wisconsin law, in the absence of a subrogation provision, medical payments made by an insurer to a party for injuries caused by a tort-feasor's negligence did not operate as an assignment of the plaintiff's claim to the insurer.

The statement of the Court in *Heifetz* that any medical payment made by an insurer results in an assignment of the insured's claim to the insurer in that amount regardless of the existence of a subrogation agreement went beyond the facts of the case and was unnecessary to a resolution of the issue presented to it on appeal.

Upon payment of Heifetz's medical expenses, the insurer had Heifetz execute a subrogation receipt and assignment. This agreement operated to extinguish any right Heifetz had to claim entitlement to the $2,000 in medical expenses, and the Court's statement that the subrogation agreement was unnecessary is superfluous.

In addition, the defendant's motion for summary judgment in *Heifetz* was grounded on the contention that the plaintiffs'

failure to join an indispensable party had caused the statute of limitations to run against them. The Court need have gone no further than its determination that the medical payments claim belonged to the insurer as assignee and the statute of limitations operated to extinguish its claim only.

Having determined that the above-quoted language is dicta, this Court is faced with the decision of whether to follow it or to rely on the otherwise well settled rule that in the absence of a subrogation agreement, an insurer is not an assignee of a plaintiff's claim for medical expenses caused by the negligence of a tort-feasor. Upon examination of the relevant Wisconsin case law and Wisconsin's application of the collateral source rule, the Court has determined that it should not follow the *Heifetz* dicta.

In support of its statement that acceptance of medical payments from an insurer operates as an assignment to the extent of the payment in the absence of a subrogation agreement, the Court relied on *Patitucci v. Gerhardt,* 206 Wis. 358, 240 N.W. 385 (1932). Reliance on *Patitucci* in support of such a sweeping statement is misplaced. There the Court reversed a jury verdict permitting the plaintiff to recover damages for losses due to injuries even though he had been reimbursed for a portion of such losses under the terms of a collision insurance policy. The Court based its decision on its conclusion that the collision policy was not an investment contract but, rather, was an indemnity contract within the meaning of *Gatzweiler v. Milwaukee Electric Railway & Light Co.,* 136 Wis. 34, 116 N.W. 633 (1908), and that, therefore, any payment made thereunder operated as an equitable assignment.

*Patitucci* stands for the proposition that the claim for payments made pursuant to an indemnity contract is the claim of the insurer by virtue of an equitable assignment and that a collision policy is an indemnity contract. *Patitucci* did not hold that acceptance of all types of payments made under all types of insurance policies operates as equitable assignments of the claim to the insurer.

In adopting the indemnity-investment contract distinction, *Patitucci* relied on *Gatzweiler v. Milwaukee Electric Railway & Light Co.,* supra, wherein the Court stated at 36, 116 N.W. at 633:

"The general effect of the cases cited is that upon payment by an insurance company to another on its contract of fire insurance on account of a loss caused by a third person, in case of its only partially repairing the damage suffered by such other, it becomes by equitable assignment the owner, *pro tanto,* of the claim of such other against such person and both parties interested are necessary to an action to enforce payment of compensation by such person, and in case the payment is a full legal equivalent for the injury, the entire claim of such other by such assignment passes to the insurance company, leaving the former no cause of action against such person.

"The doctrine aforesaid is based on the theory that in a contract of fire insurance the company is a surety, and so upon the general equitable principles of subrogation when it, as indemnitor, pays a loss caused by the negligence of a third person its relation with such person is that of surety and principal obligor. * * *"

The same equitable principles of subrogation do not apply, however, to investment contracts under which—

"* * * [T]he owner or beneficiary [has] an absolute right, independent of the right against any third party responsible for the injury covered by the policy; that if such a company desires protection against loss caused by the wrongs of third persons who would ordinarily be liable they must do so by the contracts they make; that in the absence of a feature expressly making the policy of insurance an indemnity contract, it should not be regarded as such, but held to be an investment contract in which the only parties concerned are the insurer and the assured or the beneficiary. * * *"
*Gatzweiler,* supra, at 39, 116 N.W. at 634.

*Gatzweiler* held that the casualty insurance policy at issue was an investment contract.

■ Thus, the determination of whether the plaintiff is entitled to recover for medical expenses paid for pursuant to an insurance contract that does not contain a subrogation provision appears to depend on whether such policy is an indemnity contract or an investment contract. Although the Wisconsin Supreme Court has not made that specific determination, certain decisions may be said to have made that determination by implication.

In *Associated Hospital Service v. Milwaukee Automobile Mutual Insurance Co.,* 33 Wis.2d 170, 147 N.W.2d 225 (1967), the Court, citing *Gatzweiler,* held that the parties to an accident and health insurance policy may stipulate to the granting of subrogation rights to the insurer. Although the Court specifically stated that it was not concerned with the right of an insurer to subrogation in the absence of a subrogation provision, there would be no point in making a determination that such a provision was valid and enforceable if it were not necessary to the insurer's subrogation rights.

■ In addition to the inference to be drawn from *Associated Hospital Service,* supra, the Court, employing the collateral source rule, has permitted plaintiffs to recover for medical services rendered gratuitously. *McLaughlin v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 31 Wis.2d 378, 143 N.W.2d 32 (1966); *Thoreson v. Milwaukee & Suburban Transport Corp.,* 56 Wis.2d 231, 201 N.W.2d 745 (1972). The collateral source rule manifests a strong public policy as stated by the Court in *Thoreson* at 243, 201 N.W.2d at 752:

" * * * The reason for this view [that medical and nursing services rendered gratuitously to the injured do not preclude the injured party from recovery for the value of those services] is often given that the recovery has a penal effect on a tortfeasor and the tortfeasor should not get the advantage of gratuities from third parties. * * * "

Although these cases were decided prior to *Heifetz,* they were not overruled by *Heifetz,* and the strong public policy manifested in their reaffirmation of the collateral source rule is entitled to be given some weight by this Court in determining the application of *Heifetz* dicta to this case.

■ Finally, this Court's determination that the *Heifetz* dicta does not bar the plaintiff's recovery for medical expenses paid by an insurer pursuant to a policy that did not contain a subrogation provision is reinforced by the recent Wisconsin Supreme Court decision of *Karl v. Employers Insurance of Wausau,* 78 Wis.2d 284, 254 N.W.2d 255 (1977).

In *Karl,* the defendant, relying on *Heifetz,* argued on appeal that the jury award of $2,300 to the plaintiffs for past medical expenses was unsupported by the evidence. The basis for the contention was that the insurance contract had not been put into evidence and that there was no proof of the absence of a subrogation clause. The Court held that the trial court had not erred in failing to reduce the judgment by the amount of the alleged insurance recovery, stating at 302, 254 N.W.2d at 263:

"The defendants failed to produce the alleged contract of insurance between the Karls and their hospital insurer even though they had from the third day of December 1970 until the time of trial to pursue the matter. Neither the trial court nor this court has been apprised of the nature of the particular insurance contract, whether it had a subrogation clause, or whether subrogation was waived. Because of the state of the record we find no error in the refusal of the trial court to reduce the judgment by the amount of the alleged insurance recovery."

Admittedly, the Court did not specifically decide whether the insurer was entitled to subrogation rights for medical payments in the absence of a subrogation provision in the insurance contract. However, it is noteworthy that the Court permitted the plaintiff to recover for medical expenses paid by an insurer in the absence of defendants coming forward with proof of the existence of a subrogation clause and, in so doing, rejected the defendants' position advanced in reliance on the *Heifetz* dicta.

For the foregoing reasons,

IT IS ORDERED that the defendant's motion for a directed verdict, for judgment notwithstanding the verdict, and for a new trial is denied.

IT IS FURTHER ORDERED that the plaintiff's motion to amend the judgment to include the entire sum of all of the medical bills undiminished by any group insurance payments is granted.