Roger JINDRA, Rebecca Jindra, Barry Jindra and Scott Heinritz, a minor by his guardian ad Litem, John D. Murray, Plaintiffs

v.

DIEDERICH FLOORING, Defendant-Respondent,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, ABC Insurance Company, Dairyland Insurance Company, and John Mande, Defendants,

AMERICAN & FOREIGN INSURANCE COMPANY, Defendant-Appellant,

Joseph DIEDERICH and Midwestern National Insurance Corporation, Defendants-Third Party Plaintiffs,

v.

CONTINENTAL WESTERN INSURANCE COMPANY, Third Party Defendant-Respondent.†

Court of Appeals

*Nos. 92–0640, 92–1529. Oral argument November 26, 1992.—Decided December 1, 1992.*

(Also reported in — N.W.2d —.)

† Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey T. DeMeuse* and on the briefs of and orally argued by *Bruce B. Deadman* of Green Bay.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of and orally argued by *John D. Murray* and on the brief of *Virginia M. Antoine* of *Habush, Habush & Davis, S.C.* of Appleton.

On behalf of the third party defendant-respondent, Continental Western Insurance Company, the cause was submitted on the brief of and orally argued by *George Burnett* of *Liebmann, Conway, Olejniczak & Jerry, S.C.* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.    American and Foreign Insurance Company appeals a judgment reducing the damages the jury awarded to the Jindras and Scott Heinritz by $50,000, the amount American and Foreign paid to them under their underinsured motorist coverage. American and Foreign claims that the trial court erred by finding that the $50,000 payment created a subrogated claim in favor of American and Foreign that must be asserted or it is lost under *Heifetz v. Johnson,* 61 Wis. 2d 111, 211 N.W.2d 834 (1973). Because American and Foreign's payment was a voluntary conditional payment, its failure to assert the claim at trial did not result in the loss of its right to reimbursement. We therefore reverse the trial court's judgment and remand the matter with instructions to award the full amount of damages found by the jury, together with costs, disbursements and attorney fees as permitted by law.

In January 1988, Roger Jindra, Rebecca Jindra, Barry Jindra and Scott Heinritz (collectively, Jindra) were injured when the van Roger drove was struck head-on by Joseph Diederich's vehicle. At the time of the accident, Joseph was employed by Diederich Flooring, a sole proprietorship owned by his father. Jindra asserted a claim against Joseph personally and against Diederich Flooring.

At the time of the accident, Joseph had a $50,000 liability automobile policy with Midwestern National Insurance Corporation (Midwestern). Diederich Flooring had a $500,000 liability automobile policy with Continental Western Insurance Company (Continental). Diederich Flooring and Continental denied that Joseph was in the course of his employment at the time of the accident and that their $500,000 policy applied to the loss Jindra claimed. Jindra had an automobile policy that included underinsured motorist coverage with

American and Foreign, an affiliate of Royal Insurance Company. All parties proceeded on the assumption that Jindra's damages exceeded the $50,000 Midwestern policy limits.

Midwestern paid $8,000 of its $50,000 policy limits to other injured persons and tendered the remaining $42,000 to Jindra in an attempt to settle the suit. As required by American and Foreign's policy, Jindra informed American and Foreign of Midwestern's settlement offer. American and Foreign advised Jindra to reject the settlement offer because of the unresolved issue whether Joseph was acting in the scope of his employment at the time of the accident and hence whether Midwestern's or Continental's policy limits applied. Instead, American and Foreign disbursed $50,000 to Jindra, under the underinsured motorist endorsement of the policy, with the understanding that if it was ultimately determined that Continental's $500,000 policy applied, Jindra would return the $50,000 advancement to American and Foreign.

This arrangement was predicated on the understanding between Jindra and American and Foreign that Jindra's total damages were substantially in excess of Midwestern's $50,000 policy limits and that Jindra would be entitled to the $50,000 from American and Foreign under the underinsured motorist provisions should no other insurance be available. If, however, Continental's policy applied, there would be ample insurance to cover Jindra's damages and no claim would be available under the underinsured motorist provisions of American and Foreign's policy. American and Foreign also paid Jindra approximately $1,300 under the medical pay provisions of the policy and filed a cross-claim against the other defendants claiming a subrogated interest in this amount. Two days before the trial, American and

Foreign filed an amended answer, cross-claim and counterclaim. The counterclaim was asserted against Jindra for the $50,000 advancement.

The jury ultimately determined that Joseph was acting in the course of his employment at the time of the accident, making Continental's $500,000 liability policy available to Jindra, and that Jindra had sustained $141,699.05 in damages. Continental moved the court to reduce Jindra's judgment by $50,000, contending that American and Foreign's payment of this amount to Jindra created subrogation rights in favor of American and Foreign that had to be asserted or lost. American and Foreign opposed the motion, contending that it had no subrogated claim against Continental but only an agreement with Jindra providing for the return of the money if certain conditions existed at the conclusion of the trial.

Concluding that American and Foreign possessed a subrogated claim that had to be asserted or was lost, the trial court granted the motion to reduce Jindra's judgment by $50,000 and dismissed American and Foreign's $50,000 counterclaim against Jindra without prejudice. The trial court later denied American and Foreign's motion to reopen the judgment and amend its answer to assert a cross-claim against Continental seeking recovery of the $50,000 they had advanced to Jindra under their underinsured motorist policy provisions.

■■

Whether the court properly reduced Jindra's judgment by $50,000 depends in part on whether American and Foreign possessed a subrogated claim that had to be asserted. *Heifetz*, 61 Wis. 2d at 124, 211 N.W.2d at 841. These are questions of law that we review without deference to the trial court. *See American Ins. Co. v. City of*

*Milwaukee,* 51 Wis. 2d 346, 351, 187 N.W.2d 142, 144-45 (1971).

Continental contends that American and Foreign's subrogation rights were created in either one of two ways. First, Continental claims American and Foreign was subrogated by virtue of the provisions of its own insurance policy. Second, Continental claims that American and Foreign was subrogated as a matter of law by virtue of its payment to Jindra. Continental further contends that American and Foreign's subrogation claim was barred under the doctrine announced in *Heifetz* because American and Foreign failed to assert it at trial. We do not agree that American and Foreign was subrogated or is precluded from asserting its reimbursement claim against Jindra.

Continental first contends that American and Foreign was subrogated as a result of the following provisions of its own policy:

### OUR RIGHT TO RECOVER PAYMENT

A. If we make payment under this policy and the person to whom or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

. . ..

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery, and

2. Reimburse us to the extent of our payment.

In the 1988 amendment to American and Foreign's policy, the following paragraph was added to the "Our Right to Recover Payment" clause:

> We shall be entitled to recovery under paragraph A. or B. only after the person has been fully compensated for damages by another party.

Continental contends that the payment was made under paragraph A, which by its terms creates a subrogated right. We note first that the paragraph in question is contained in the body of the insurance policy and is not made directly applicable to the underinsurance provision of the policy. Nonetheless, we assume for the purpose of this discussion that the provisions of the "Our Right to Recover Payment" clause in the insurance contract applies to all payments made under the policy, including underinsured motorist payments.

There are two paragraphs regarding American and Foreign's right to recover payment—paragraph A, involving subrogation rights, and paragraph B, providing for reimbursement. Although we agree that payment may have been made under either of these two paragraphs, the actual terms of the agreement between American and Foreign and Jindra indicate payment was made under paragraph B because the agreement was that Jindra would reimburse American and Foreign for its advancement if Continental's policy applied. Nothing in the agreement's terms demonstrates that American and Foreign or Jindra contemplated an assignment of a portion of Jindra's claim to American and Foreign. We therefore conclude that the terms of this agreement are consistent only with the reimbursement provisions in paragraph B, which does not by its terms create a subrogated right in favor of American and Foreign. Therefore,

no right of subrogation was created pursuant to the terms and provisions of American and Foreign's policy.

Continental also claims that American and Foreign's payment created a subrogation right as a matter of law under *Heifetz* and *Vogt v. Schroeder,* 129 Wis. 2d 3, 26, 383 N.W.2d 876, 885 (1986). Once again, we do not agree. Our supreme court stated in *Rixmann v. Somerset Public Schools,* 83 Wis. 2d 571, 579, 266 N.W.2d 326, 330 (1978), that "*Heifetz* should not be interpreted as holding that under all circumstances subrogation occurs when an injured party's insurer makes a payment to him . . .." The right to subrogation arises when someone "*other than a mere volunteer* pays a debt which in equity and good conscience should be satisfied by another." *American Ins. Co.,* 51 Wis. 2d at 351, 187 N.W.2d at 145 (emphasis added). Where an insurer gratuitously makes payment to its insured, the collateral source rule mandates that the insured should be entitled to recover the amount paid from the tortfeasor to prevent the tortfeasor from benefitting from the insurer's gratuity. *Rixmann,* 83 Wis. 2d at 580, 266 N.W.2d at 330-31.

Here, American and Foreign's policy requires it to make payments only if the tortfeasor's insurance liability limits are less than the amount of bodily injury damages sustained by American and Foreign's insured. Thus, American and Foreign had no legal obligation to pay under its underinsured motorist provisions unless and until it was determined that Continental's $500,000 policy was not available to satisfy Jindra's claim for damages. American and Foreign paid $50,000 to Jindra, notwithstanding the fact that it had no legal duty to pay at the time payment was made, on the condition that Jindra would repay the money if it was ultimately deter-

mined that Continental's policy applied. American and Foreign's payment was voluntary because American and Foreign was not then legally obligated to pay and was conditional because Jindra agreed to reimburse American and Foreign if he was made whole by a judgment against Diederich Flooring and Continental.

We note that the facts in *Heifetz* and *Vogt* were dramatically different from the facts in this case. In neither case was payment voluntarily made; the insurer making payment had a clear and unequivocal duty to pay under the terms and provisions of its policy. In *Heifetz,* the insurer was required to pay under the medical pay provisions of its policy. *Id.* at 113, 124, 211 N.W.2d at 835, 841. In *Vogt,* it was undisputed that the tortfeasor was an underinsured motorist. *Id.* at 7-8, 383 N.W.2d at 877-78.

Finally, we note that *Schmidt v. Clothier,* 338 N.W.2d 256, 262 (Minn. 1983), adopted by our supreme court in *Vogt,* granted an underinsurance carrier subrogation rights "[o]nce [it] has paid the benefits it *contractually* owes to its insured . . .." (Emphasis added.) Here, American and Foreign did not contractually owe Jindra anything under the underinsured motorist provisions unless and until it was determined that Joseph was not acting in the scope of his employment, making Midwestern's $50,000 policy limits applicable to Jindra's damages.

Continental argues that American and Foreign acknowledges the legal effect of its payment is to create subrogation rights in the affidavit of Scott Rasor, Royal Insurance's claims manager. The affidavit states that payment was made "pursuant to *Vogt v. Schroeder.. . .* The payment was made to protect a potential subrogation claim against Joseph Diederich." To the extent it addresses the preservation of a potential claim against

97

Joseph personally for the recovery of the underinsured motorist payment, the affidavit is correct. We do not conclude, however, that the affidavit created subrogation rights against Continental, Diederich's employer's insurer. The agreement in force if Continental's policy limits are applicable is recited in the next paragraph in the affidavit, which provides that Jindra will reimburse American and Foreign if he recovers from Continental.

While the broad language in both *Heifetz* and *Vogt* referred to the creation of a subrogated right arising by operation of law upon payment, that right is not created when the payment is voluntarily made and conditionally tendered as under the facts of this case. We conclude that the voluntary and conditional nature of American and Foreign's payment is inconsistent with the right of subrogation discussed in *Heifetz* and *Vogt*.

Having concluded that American and Foreign was not subrogated to Jindra's claim, we need not discuss whether it is barred from asserting its claim under the doctrine of *Heifetz*. We do note, however, that in *Vogt* one of the options available to a subrogated underinsurance carrier is to pay the underinsured motorist benefits to its insured and "continue the action in its insured's name . . . ." *Id.* at 26, 383 N.W.2d at 885. This is exactly what American and Foreign's agreement with Jindra contemplated.

Continental argues that American and Foreign, by entering into this agreement, is attempting to "do nothing and yet share in the settlement," a practice prohibited by *Radloff v. General Cas. Co.,* 147 Wis. 2d 14, 17, 20, 432 N.W.2d 597, 598, 599 (Ct. App. 1988). In *Radloff,* we interpreted sec. 803.03(2)(a), Stats., to require a subrogee either to participate in the prosecution of the claim or to have the party that joined it represent its interest,

or be faced with dismissal with prejudice. *Id.* at 20, 432 N.W.2d at 599. Because *Radloff* applies to subrogated insurers and American and Foreign is not a subrogated insurer, we need not address this argument. However, we note that unlike the insurer in *Radloff,* American and Foreign responded to the pleadings of all parties, participated in pretrial discovery, entered an appearance, argued several motions and participated in the prosecution of Jindra's claim to the extent that it was not foreclosed from participating by virtue of Continental's motion in limine. *See id.* at 16-17, 432 N.W.2d at 598. Continental moved the trial court to substantially restrict American and Foreign's participation in the trial and cannot now complain that American and Foreign failed to sufficiently participate.

Continental further argues that it has been prejudiced by American and Foreign's failure to join its reimbursement claim in the proceeding because it was deprived of the opportunity to adequately defend against it. We find no merit to these contentions. American and Foreign makes no claim against Continental; thus, Continental has no standing to contest the terms of the agreement existing between American and Foreign and Jindra. Only Jindra possesses whatever defenses exist against reimbursement, and only Jindra may assert these defenses.

We therefore conclude that the trial court erred by reducing Jindra's judgment by the amount of American and Foreign's payment and reverse the judgment with directions to increase Jindra's judgment to the amount awarded by the verdict, together with costs, attorney fees and disbursements as provided by law. Because we have directed reinstatement of the judgment in the amount awarded by the jury, Jindra will be made whole and we

99

need not address Continental's argument that allowing American and Foreign to assert its reimbursement claim against Jindra would result in Jindra's not being made whole.

*By the Court.*—Judgment reversed and cause remanded with directions.