Douglas KRECH, Plaintiff-Appellant,†

v.

Palmer HANSON, Allstate Insurance Company, Pierce County, St. Croix County, Employer's Insurance of Wausau, a mutual company, and Northern States Power Company, Defendants,

IDS PROPERTY CASUALTY INSURANCE COMPANY, f/k/a Wisconsin Employers Casualty Company, Defendant-Respondent.

Court of Appeals

*No. 91-0130. Submitted on briefs June 28, 1991.—Decided July 30, 1991.*

(Also reported in 473 N.W.2d 600.)

† Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Ardell W. Skow* of *Doar, Drill & Skow, S.C.* of Baldwin.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Theodore A. Franti* of *Weisel, Thrasher, Doyle & Pelish, Ltd.* of Rice Lake.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Douglas Krech appeals a decision granting IDS Property Casualty Insurance Company's

motion for summary judgment. Krech argues that the trial court erred by determining that the truck driven by Palmer Hanson did not fall within the definition of an underinsured motor vehicle in Krech's policy and, therefore, Krech was not entitled to collect any benefits from his underinsured motorist provision. For the reasons that follow, we affirm the trial court's decision.

Krech was injured in a motor vehicle accident as a passenger in a truck driven by Hanson. The truck was insured by Allstate Insurance Company with liability coverage limitations of $100,000 per person. Krech qualifies as an additional insured under his brother's policy provided by IDS. The IDS policy covers two vehicles. A separate premium was charged per vehicle. With respect to each vehicle policy there was underinsured coverage limits of $100,000 per person.

The IDS policy defines an underinsured motor vehicle as "a motor vehicle for which there is a bodily injury policy or liability bond available at the time of the car accident *which provides bodily injury liability limits less than the limit of liability for this coverage.*" (Emphasis added.) The sole issue on appeal is whether Hanson's car is an underinsured motor vehicle under the terms of the IDS policy. Because Hanson's vehicle does not qualify as an underinsured vehicle, Krech is not entitled to recover under the underinsured provisions of the IDS policy.

Krech asks us to stack the $100,000 underinsured motorist coverage for each vehicle on his policy to find that Hanson's truck qualifies as an underinsured vehicle. In other words, he asks this court to stack the amounts on the policy before we decide if there is coverage. If we do this, he argues, he would have $200,000 underinsured coverage. Comparing ·his $200,000 coverage to the $100,000 liability policy on Hanson's truck, the truck would qualify under the policy definition of an underin-

sured motor vehicle. We reject Krech's argument and hold that coverage must be determined prior to the "stacking" of insurance policies.

Wisconsin law provides that although two motor vehicles may be listed as insured on one document, if separate premiums are paid with regard to each vehicle, the document in fact represents two separate policies. *Burns v. Milwaukee Mut. Ins. Co.*, 121 Wis. 2d 574, 578, 360 N.W.2d 61, 63-64 (Ct. App. 1984). Here, because the policy that insures Krech contains two separate premiums paid for two $100,000 limits on underinsured motor vehicle coverage, we start from the premise that this document contains two separate policies. Therefore, the first step in our analysis is to determine whether each policy separately provides coverage for this loss. Only if both policies provide indemnification against the "same loss" do we stack the amounts.[1] Because we find that neither policy provides indemnification for this loss, this is not a stacking case.

In order to determine whether coverage is afforded under the provisions of an insurance contract, we first look to the language of the contract. The construction of

---

[1]Section 631.43(1), Stats. provides:

When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured.

language in an insurance policy is a question of law that we review de novo. *Lambert v. Wrensch,* 135 Wis. 2d 105, 115, 399 N.W.2d 369, 373-374 (1987). We cannot alter the unambiguous language of an insurance policy. *Schroeder v. Blue Cross & Blue Shield,* 153 Wis. 2d 165, 173, 450 N.W.2d 470, 473 (Ct. App. 1989).

The recent case, *Smith v. Atlantic Mut. Ins. Co.,* 155 Wis. 2d 808, 456 N.W.2d 597 (1990), is helpful. In that case, Smith and Goulias were involved in an accident. Atlantic Mutual, Smith's insurance company defined an underinsured motor vehicle as follows:

> [A] land motor vehicle . . . to which a bodily injury liability bond or policy applies at the time of the accident *but its limit for bodily injury liability is less than the limit of liability for this coverage.*

*Id.* at 811, 456 N.W.2d at 599 (emphasis in original). The supreme court ruled that as a matter of law Goulias' vehicle did not fit within the policy definition of an underinsured motor vehicle. It stated:

> *Coverage under this provision only applies when the owner or driver of the other vehicle maintains a policy with a lower coverage than the insured.* Here, Goulias' liability limits of $50,000 were the same as, and not less than, the $50,000 limits of Smith's UIM coverage. Accordingly, under the clear terms of the policy, Goulias' vehicle is not an underinsured motor vehicle, and Atlantic Mutual need not provide coverage.

*Id.* (emphasis added). Because the language used to define "underinsured motor vehicle" in *Smith* is virtually identical to the language in the IDS policy, we are constrained to use the same definition set forth by the

174

Wisconsin Supreme Court as "plain and unambiguous."[2]

Applying the *Smith* definition of underinsured motor vehicle to these facts, the "limit of liability for

---

[2]Although we recognize that the court in *Smith* was construing specific policy language, we would like to point out that the definition the court found "plain and unambiguous" does not seem to comport with the more common understanding of the coverage afforded in underinsured motor vehicle provisions. We believe the following statement to be more consistent with the expectations of the average insured regarding his underinsured motorist coverage: "[W]hen purchasing UIM coverage, we believe that a reasonable insured expects to be protected against a loss caused by another that is not covered by the underinsured driver's liability coverage." *Wood v. American Fam. Mut. Ins. Co.,* 148 Wis. 2d 639, 654, 436 N.W.2d 594, 600 (1989) (citing *Schwochert v. American Fam. Mut. Ins. Co.,* 139 Wis. 2d 335, 346, 407 N.W.2d 525, 530 (1987)).

The court goes on to state: "The purpose of UIM coverage is to compensate the victim of an underinsured motorist's negligence where the third party's liability limits are not adequate to fully compensate the victim for his or her injuries." *Id.*

This sentiment was also expressed in *Kaun v. Industrial Fire & Cas. Ins. Co.,* 148 Wis. 2d 662, 436 N.W.2d 321 (1989). In *Kaun* the court, explaining the difference between uninsured and underinsured motor vehicle coverage, stated: "UM [uninsured] coverage is effective where the tortfeasor has no liability insurance, and the UIM [underinsured] coverage is effective where there is a tortfeasor with liability coverage inadequate in amount for the injuries caused." *Id.* at 668, 436 N.W.2d at 323.

However, in order to consider the reasonable expectations of the insured in this case, we would first have to find that the IDS policy definition of "underinsured" was ambiguous. We cannot find the IDS definition to be ambiguous because the supreme court determined in *Smith* that the same language was not ambiguous as a matter of law.

this coverage" under each vehicle policy is $100,000. We must, therefore, take each $100,000 IDS policy individually and compare it to Hanson's $100,000 liability coverage. Comparing Krech's first $100,000 policy limit to Hanson's $100,000 liability coverage, because Hanson's limits are equal to and not less than Krech's, Hanson's truck does not meet the IDS definition of underinsured motor vehicle. The results are the same when we compare the second $100,000 limit to Hanson's $100,000 liability policy.

We disagree with Krech's contention that coverage is compelled by the supreme court decisions in *Kaun* and *Wood.* We find these cases inapplicable for the same reasons that the supreme court found them inapplicable in *Smith.* The court reasoned: "Significantly, no issue was raised in *Wood* or *Kaun* regarding the definition of underinsured motor vehicle. In those cases, the phrase 'amounts payable' was found to be ambiguous in the context of the policy's reducing clause." *Smith,* 155 Wis. 2d at 814, 456 N.W.2d at 600. Here, as in *Smith,* the question concerns the definition of underinsured vehicle. Therefore, *Smith* is the controlling law on this issue.

In addition, the *Wood* case, dealing with underinsured coverage, is factually distinct. The insurance policy at issue in *Wood* contained a "drive other car exclusion." The policy that covered the at fault vehicle had a liability limit of $25,000. The Woods had underinsurance coverage on two vehicles, each with a limit of $100,000. Except for the drive other car exclusion, the policy language provided underinsured motor vehicle coverage for the accident. The court found the drive other car exclusion to be invalid and unenforceable under sec. 631.43(1), Stats. Here, however, this type of provision is not central to the dispute. True, any language in the policy that purports to limit the stackability

of underinsured coverage is unenforceable. We do not reach that issue, however, because our analysis ends with the definition of "underinsured motor vehicle" in the policy. Unlike *Wood,* Hanson's motor vehicle does not pass the threshold inquiry, whether absent any other policy provision, the insured would be afforded underinsured coverage. If it had, only then would the inquiry into the "stackability" of the two policies be relevant.

Because Hanson's truck does not meet the definition of underinsured motor vehicle in the IDS policies, Krech cannot recover under that provision. Therefore, we find that the trial court did not err by granting summary judgment in favor of IDS.[3]

*By the Court.*—Judgment affirmed.

[3]We sympathize with Krech's argument that the definition of underinsured motor vehicle in the *Smith* policy and the policy here is unfair in that it does not comport with the average person's understanding of the coverage he is purchasing with underinsurance provisions. These definitions also lead to situations like Smith's and Krech's where the insured has in fact bought nothing for his money. Our best answer to Krech is that perhaps the legislature will see fit to enact a definition of underinsured motorist coverage that comports with the average person's understanding of the coverage he is buying. Many other states, as pointed out to us in Krech's brief, have enacted statutory definitions of underinsured motor vehicles. Until the Wisconsin legislature enacts such a law, however, we cannot disregard the fact that the supreme court in *Smith* did not find this definition to be in conflict with Wisconsin law.