IN RE the MATTER OF the SETTLEMENT FOR PERSONAL INJURIES OF Denise R. KONICKI:

ALLSTATE INSURANCE COMPANY, Appellant,†

v.

Denise R. KONICKI, Respondent.

Court of Appeals

*Nos. 92–2723, 93–0743. Oral argument February 10, 1994.—Decided June 23, 1994.*

(Also reported in 519 N.W.2d 723.)

†Petition to review filed.

For the appellant the cause was orally argued by *Terrence E. Davczyk* and submitted on the briefs of *Terrence E. Davczyk* and *John E. Cain* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

For the respondent the cause was orally argued by *Wayne L. Maffei* and submitted on the brief of *Wayne L. Maffei* and *Jean M. Wilson* of *Cross, Jenks, Mercer and Maffei* of Baraboo.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J.    The issues in this case involve the interpretation and application of "underinsured" and "uninsured" motorist coverages in a policy of automobile liability insurance.

144

## I. BACKGROUND AND ISSUES

Denise Konicki, while a minor, was seriously injured in an automobile accident. Because the responsible party's insurance was insufficient to cover her damages, she sought recovery under the underinsured motorist provisions of her parents' Allstate Insurance Company automobile liability policy. The policy covered two automobiles and provided underinsured motorist coverage of $100,000. Believing that, under the law, underinsured motorist coverage for the two automobiles could not be "stacked," she settled for the $100,000 policy limit applicable to the car involved in the accident (less the $50,000 received from the responsible party's insurer).

Later, Konicki sought to vacate the settlement to seek additional recovery under the policy. She did not dispute that, under then existing law, *un*insured motorist coverage could be stacked, but *under*insured coverage could not. She argued, however, that because the Allstate policy defined underinsured coverage as a subcategory of *un*insured coverage, it could be stacked, thus entitling her to additional recovery.

The trial court agreed; it granted the motion to reopen and, ruling that the coverage provided for the two automobiles listed on the policy could be stacked, awarded Konicki an additional $100,000, together with prejudgment interest.

Allstate appeals, arguing that: (1) the trial court erroneously exercised its discretion in reopening the judgment on the facts of the case; (2) the court's ruling that the coverage provided for the two automobiles could be "stacked" is erroneous as a matter of law;[1] and

[1] Alternatively, Allstate argues that if the Konickis are permitted to stack the coverage, it should be permitted to "stack"

(3) the court erred in awarding prejudgment interest to Konicki.

We conclude that the trial court did not err either in fact or law when it reopened the judgment and ruled that the coverages could be stacked. We also conclude, however, that the court's findings are insufficient to support the award of prejudgment interest and we remand for further proceedings to determine the factual issues surrounding Konicki's claim for prejudgment interest at both common law and under § 628.46, STATS.

## II. FACTS

The underlying facts are not in dispute. In May 1986, Denise Konicki, a passenger in an automobile driven by Tamara Udulitch, was severely injured when Udulitch's car went out of control and Denise was thrown from the car. Because the $50,000 policy limit of Udulitch's liability insurance was inadequate to cover Denise's damages, she sought to recover under the "underinsured motorist" coverage in her parents' Allstate policy.

Denise was represented in the settlement negotiations by her guardian ad litem, William Greenhalgh. James Konicki, Denise's father, who is an insurance agent, did not provide Greenhalgh with a copy of the policy or its declarations page but gave him only a packet of Allstate brochures. Greenhalgh then requested that Allstate provide him with a copy of the policy, and the company responded by sending him a description of the policy and a certification of the cover-

its reducing clause, deducting the amount Denise Konicki received from the negligent party's insurer from the coverage on each of the Konickis' two cars, thus reducing the court's award from $100,000 to $50,000.

age in effect for the car involved in the accident. It did so based on its understanding that, under applicable Wisconsin case law at the time, underinsured motorist coverage—unlike *un*insured motorist coverage—could not be "stacked" so as to increase the total policy recovery limits.

Based on that information, Greenhalgh negotiated an agreement with Allstate to settle Konicki's claim for $50,000—subtracting the $50,000 received from Udulitch's insurer from the total coverage of $100,000. The trial court approved the settlement on March 5, 1987.

A few months later, on July 31, 1987, Konicki's health insurer, Employers Health Insurance Company, contacted Greenhalgh inquiring whether, in light of the fact that the Konickis owned two automobiles, they had in fact received all available underinsured motorist coverage from Allstate. Greenhalgh responded that, even though two cars were insured, Konicki had recovered all possible benefits from Allstate.

Three years later, in July 1990, Employers again contacted Greenhalgh attempting to ascertain whether Employers might make a claim against Allstate for additional underinsured motorist benefits. In response to this inquiry, Greenhalgh obtained, for the first time, a copy of the Allstate policy's declarations page from James Konicki and sent it to Employers.

After obtaining the information, Employers sued Allstate on July 11, 1990, for additional benefits pursuant to the underinsured motorist provisions of its policy. In its answer to Employers' complaint, Allstate raised the settlement agreement with Konicki as a bar to the action.

On May 10, 1991, Greenhalgh, who had joined in Employers' action, filed a motion under § 806.07(1)(h),

147

STATS., to vacate the settlement. Section 806.07 lists several specific grounds upon which relief may be granted from judgments, orders or stipulations, and paragraph (h), the "catch-all" provision, gives the trial court discretion to reopen a judgment for "[a]ny other reasons justifying relief . . . ."

The trial court granted the motion and entered an order vacating its approval of the settlement, concluding that, because Allstate's underinsured motorist coverage could be "stacked" for each of the Konickis' two automobiles[2] and they were unaware of this fact, considerations of justice and equity required that they be relieved from their settlement agreement. The court confirmed the order in a judgment entered on reconsideration. The judgment awarded Konicki an additional $100,000 under the Allstate policy and added prejudgment interest of $64,734.25, accruing at the rate of twelve percent from March 5, 1987, the date the original settlement was approved. Allstate appeals from the judgment. Other facts will be referred to below.

### III. REOPENING THE JUDGMENT

#### A. *Introduction*

Trial courts have "broad discretionary authority" to grant relief under § 806.07(1)(h), STATS. *Mullen v.*

---

[2] The trial court's decision assumed that, while the law in effect at the time of the settlement allowed *un*insured motorist coverage to be stacked, it precluded the stacking of *under*insured coverage. Because, however, the Allstate policy defined "underinsured motorist" coverage as a subcategory of "uninsured motorist" coverage, the court ruled that the laws applicable to *un*insured motorist coverage applied and thus the coverage in question could be stacked.

*Coolong*, 153 Wis. 2d 401, 407, 451 N.W.2d 412, 414 (1990). Indeed, we said in *Eau Claire County v. Employers Ins.*, 146 Wis. 2d 101, 109, 430 N.W.2d 579, 582 (Ct. App. 1988), that we will not overturn an order granting relief under § 806.07(1)(h) "unless there has been a clear abuse of discretion."[3]

The limited scope of our review of discretionary rulings is well settled.

> Generally, "[w]e will not reverse a discretionary determination by the trial court if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision." *Prahl v. Brosamle*, 142 Wis. 2d 658, 667, 420 N.W.2d 372, 376 (Ct. App. 1987). Indeed, "[b]ecause the exercise of discretion is so essential to the trial court's functioning, we generally look for reasons to sustain discretionary determinations." *Schneller v. St. Mary's Hosp.*, 155 Wis. 2d 365, 374, 455 N.W.2d 250, 254 (Ct. App. 1990), *aff'd*, 162 Wis. 2d 296, 470 N.W.2d 873 (1991).
>
> To determine whether the trial court properly exercised its discretion in a particular matter, we look first to the court's on-the-record explanation of the reasons underlying its decision. And if that explanation indicates that the court looked to and "considered the facts of the case and reasoned its way to a conclusion that is (a) one a reasonable judge could reach and (b) consistent with applicable law, we will affirm the decision even if it is not one with which we ourselves would agree." *Burkes v.*

---

[3] Since the supreme court's decision in *City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 171 Wis. 2d 400, 423, 491 N.W.2d 484, 493 (1992), the "locution" of the standard—but not the standard itself—has been changed to "erroneous exercise of discretion."

*Hales*, 165 Wis. 2d 585, 590, 478 N.W.2d 37, 39 (Ct. App. 1991).

*Steinbach v. Gustafson*, 177 Wis. 2d 178, 185-86, 502 N.W.2d 156, 159 (Ct. App. 1993).

■

Because an appropriate exercise of discretion requires the application of correct legal principles to the facts of record, *Hlavinka v. Blunt, Ellis & Loewi, Inc.*, 174 Wis. 2d 381, 392, 497 N.W.2d 756, 760 (Ct. App. 1993), a trial court erroneously exercises its discretion when its decision is based on a misapplication or erroneous view of the law. *Datronic Rental Corp. v. DeSol, Inc.*, 164 Wis. 2d 289, 292, 474 N.W.2d 780, 781 (Ct. App. 1991). On this appeal, Allstate challenges the trial court's decision on both grounds: it argues that the court erroneously exercised its discretion in granting relief to the Konickis on the facts of the case and, additionally, that the decision is legally incorrect. We consider the arguments in turn.

### B. Reopening on the Facts of the Case

The trial court found as a fact that the Konickis had settled with Allstate based on their understanding that $100,000 was the maximum allowable limit under the policy's underinsured motorist provisions when in fact there was $100,000 coverage on each car. As a result, the court concluded that "[t]he Konickis did not make a well[-]informed decision as to the extent of available coverage at the time of the settlement," and that "extraordinary circumstances" existed to justify relief under § 806.07(1)(h), STATS.

■

Where, as here, relief from a judgment or settlement is sought under the catch-all provisions of § 806.07(1)(h), STATS., based on facts that would also

justify relief under specific subsections of the statute—such as those dealing with "[m]istake, inadvertence, surprise, or excusable neglect," or "[n]ewly-discovered evidence"—relief will be granted only where "extraordinary circumstances" are present. *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 552, 363 N.W.2d 419, 427 (1985). The *M.L.B.* court listed the following factors as relevant to the trial court's exercise of discretion in determining whether "extraordinary circumstances" warrant relief from a judgment or stipulation under § 806.07(1)(h) in a given case:

> In exercising its discretion, the circuit court should consider factors relevant to the competing interests of finality of judgments and relief from unjust judgments, including the following: whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant; whether the claimant received the effective assistance of counsel; whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments; whether there is a meritorious defense to the claim; and whether there are intervening circumstances making it inequitable to grant relief.

*Id.* at 552-53, 363 N.W.2d at 427.

Allstate points to case law indicating that there is a "strong policy" in favor of the finality of judgments and settlements, *Eau Claire County*, 146 Wis. 2d at 111, 430 N.W.2d at 583, and that paragraph (h) should be used "sparingly." *M.L.B.*, 122 Wis. 2d at 550, 363 N.W.2d at 426. It is also recognized, however, that the statute "must be liberally construed to allow relief . . .

'whenever such action is appropriate to accomplish justice.' " *Mullen*, 153 Wis. 2d at 407, 451 N.W.2d at 414 (quoting *Klapprott v. United States*, 335 U.S. 601, 615 (1948)).

That the trial court in this case exercised its discretion in granting Konicki's motion is evidenced by its lengthy and well-reasoned memorandum decision and its formal findings of fact and conclusions of law. In its decision, the court discussed in detail its reasons for determining that Konicki's decision to settle the case for only a fraction of the benefits available under the policy was the result of an uninformed assumption as to the true extent of available coverage. And in so deciding, the court stated that it found "absolutely truthful the Konickis' allegation that they were unaware of the ability to stack [the coverages]."[4]

Citing Greenhalgh's failure to obtain the declarations page for the policy during the time the settlement was being negotiated—and the fact that James Konicki, himself an insurance agent, had a copy in his possession at all times—Allstate argues that the trial court erroneously exercised its discretion in reopening the case. However, the test on review of a trial court's discretionary decision is not whether we ourselves would agree or disagree with that decision were we deciding the matter in the first instance, but whether the court, having exercised its discretionary authority, arrived at a result a reasonable judge could reach. *Steinbach*, 177 Wis. 2d at 185-86, 502 N.W.2d at 159. The trial court's decision in this case meets that standard.

---

[4] Whether the coverages could be stacked as a matter of law is considered in the following section of this opinion.

## C. Legal Error

Allstate argues, however, that the legal premise on which the trial court based its decision is flawed. It maintains first that the inclusion of "underinsured autos" in the definition of "uninsured autos" in its policy does not warrant the conclusion that underinsured coverages may be stacked. As we have noted above, it is well settled that a court erroneously exercises its discretion if its decision is based on an incorrect or erroneous view of the law. *Datronic*, 164 Wis. 2d at 292, 474 N.W.2d at 781.

Allstate refers us to several cases from other jurisdictions which, according to Allstate, establish the following: (1) it is standard practice in the insurance industry to define an uninsured motor vehicle to include an underinsured motor vehicle; and (2) such a definition does not mean that uninsured motorist coverage law applies to underinsured coverage in that circumstance.

We considered the provision of the Allstate policy at issue here[5] in *Allstate Ins. Co. v. Gifford*, 178 Wis. 2d 341, 345, 504 N.W.2d 370, 372 (Ct. App. 1993), noting that, under the policy's definitional scheme, "Allstate insured the [policyholders] against underinsured autos as part of its *uninsured*-motorist coverage." In *Gifford*, the injuries suffered by Allstate's insured in the accident exceeded the limits of the policy held by the other driver. Applying the Allstate definitions, we concluded that the other driver's *under*insured vehicle was an

---

[5] The provision defines an uninsured automobile as: "(5) an underinsured motor vehicle which has bodily injury liability protection in effect and applicable at the time of the accident, but less than the applicable limit of Uninsured Motorist's Coverage shown on the declarations page."

*un*insured auto within the meaning of the policy because "[v]ehicles meeting the policy's definition of 'underinsured' . . . are entitled to be treated as 'uninsured' under the policy." *Id.* at 347, 504 N.W.2d at 372. Indeed, a principal portion of our decision in *Gifford* was premised on an *un*insured motorist case, *United Fire & Casualty Co. v. Kleppe*, 174 Wis. 2d 637, 498 N.W.2d 226 (1993), and we considered the case to be "directly on point" on the question of *under*insured coverage because the insurer—Allstate—had decided to "define[ ] its uninsured-motorist coverage to encompass underinsured motorists." *Gifford*, 178 Wis. 2d at 351 n.6, 504 N.W.2d at 374.

Allstate maintains that our statements in *Gifford* should be considered *obiter dicta* because the result of the case was a remand to the trial court for consideration of other issues. We disagree. First, "when a court . . . intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision." *State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85, 88 (1981). Second, we applied the *Gifford* language in a subsequent case, *Sobieski v. Farmers Ins. Exch.*, 181 Wis. 2d 324, 330, 510 N.W.2d 796, 798 (Ct. App. 1993). We believe *Gifford* not only speaks to but controls the issue, and that the trial court correctly determined that the policy definitions making underinsured coverage a subcategory of uninsured had the effect of allowing stacking of the Konickis' underinsured coverage in this case.

Alternatively, Allstate argues that, if we should uphold reopening the settlement, thus entitling Konicki to stack the underinsured coverage limits, All-

state should be allowed to similarly "stack" the reduction in benefits mandated by its "reducing clause" for each of the Konickis' two automobiles. The reducing clause states: "If the loss involves the use of an underinsured auto, the limit of this coverage will be reduced by all amounts paid by or on behalf of the owner or operator of the underinsured auto . . . ."

Thus, according to Allstate, the $50,000 Konicki received from Udulitch's insurer should be applied to the $100,000 coverage afforded to *each* of the Konickis' two cars, resulting in a total recovery of $100,000, rather than the $150,000 allowed by the trial court. Allstate claims such a result is mandated by *Krech v. Hanson*, 164 Wis. 2d 170, 473 N.W.2d 600 (Ct. App. 1991).

In *Krech*, the issue was whether the defendant's vehicle was an "underinsured" vehicle within the meaning of the applicable policy. The defendant had liability coverage of $100,000 per person and the plaintiff qualified as an additional insured under a policy covering two vehicles, each with underinsured motorist coverage limits of $100,000 per person. The plaintiff's policy defined an underinsured vehicle as one insured by a policy "which provides . . . liability limits less than the limit of liability for this coverage." *Krech*, 164 Wis. 2d at 172, 473 N.W.2d at 601. The plaintiff sought to qualify the defendant's vehicle as an underinsured vehicle under the definition by stacking the $100,000 coverage for each vehicle to arrive at a total of $200,000, so that, when compared to the $100,000 coverage limit in the defendant's policy, the vehicle would be "underinsured." *Id*. We rejected the argument, holding that "coverage must be determined prior to the 'stacking' of insurance policies." *Id*. at 173, 473 N.W.2d at 601. We began our analysis with the premise that,

155

because the plaintiff paid two separate premiums for the underinsured coverage on his two vehicles, the policy was in effect "two separate policies," each with $100,000 underinsured motorist coverage. *Id.* at 173, 473 N.W.2d at 601-02. Thus, comparing each "separate policy" with the $100,000 per-person liability limit set forth in the defendant's policy, we concluded that the defendant's vehicle did not meet the plaintiff's policy's definition of "underinsured motor vehicle." *Id.* at 176, 473 N.W.2d at 603.

Allstate argues that because, under *Krech*, determination of the existence of underinsured coverage must be made by comparing the tortfeasor's limits to each "separate" policy, so must the "underinsured motorist coverage calculation . . . be made for each separate policy." Thus, says Allstate, each $100,000 in coverage must be reduced by the $50,000 paid by Udulitch's insurer, limiting Konicki's underinsured motorist coverage under the Allstate policy to a total of $100,000. Konicki counters by asserting that there was no issue in *Krech* involving the effect of a reducing clause—that *Krech* holds only that the defendant was not underinsured, and that it would be overreaching to consider the case as requiring a doubling-up of the reducing clause.

We note in passing that Allstate's argument makes sense in light of the "fictional" origin of the concept that where a policy insures two vehicles, each with its separate premium, the policy should be treated in effect as two separate policies providing two separate coverages which may, in certain instances, be stacked to double the available benefits. *See Burns v. Milwaukee Mut. Ins. Co.*, 121 Wis. 2d 574, 578, 360 N.W.2d 61, 63-64 (Ct. App. 1984). We do not agree, however, that

*Krech* requires the result sought by Allstate in this case.

First, we agree with Konicki that *Krech* is inconclusive on the point argued here. Indeed, we expressly noted in *Krech* that "this is not a stacking case." *Krech*, 164 Wis. 2d at 173, 473 N.W.2d at 602. Second, we considered the question more recently in *Gifford*, which, as we have noted above, involved an Allstate policy essentially identical to the one at issue here.

As we also have noted, we first concluded in *Gifford* that, because the policy defined underinsured coverage as a subcategory of uninsured coverage, the laws and rules applicable to the latter form of coverage controlled. *Gifford*, 178 Wis. 2d at 347, 504 N.W.2d at 372. Then, citing *Kleppe*, which held that clauses reducing uninsured motorist coverage are unenforceable if the reduction is one which would not be available to the tortfeasor, we concluded that the Allstate reducing clause did not apply. *Id.* at 350-51, 504 N.W.2d at 374.

Konicki does not challenge the trial court's subtraction of the $50,000 payment from the total coverage available under the uninsured/underinsured motorist provisions of the Allstate policy; rather, she seeks affirmance of the trial court's ruling that her total recovery from Allstate be set at $150,000—the $200,000 "stacked" coverage less the $50,000 received from Udulitch's insurer.

We agree that such a result is appropriate. The trial court correctly ruled that the coverages for the Konickis' two vehicles could be stacked, and Allstate has not persuaded us that the $50,000 reduction for the amount received from Udulitch's insurer should be doubled.

157

## D. Prejudgment Interest

The trial court's findings of fact and conclusions of law awarded Konicki $64,734.25 in "[p]rejudgment interest." The findings, however, are silent on any reasons for the award itself, the manner in which it was calculated, and any factual underpinnings for it. Nor do the parties' briefs aid in our understanding of the basis for the award. Allstate simply states, without any citation to the record, that the interest accrued from the date the trial court approved the original settlement, and that it was calculated based on a rate of twelve percent *per annum*. While we will normally ignore arguments based on facts for which no record citations are provided by counsel, *Lechner v. Scharrer*, 145 Wis. 2d 667, 676, 429 N.W.2d 491, 495 (Ct. App. 1988), because Konicki recites the same facts in her brief—again without citation to the record—we consider them to be conceded.[6]

Citing *Nicholson v. Home Ins. Cos.*, 137 Wis. 2d 581, 405 N.W.2d 327 (1987), Allstate argues first that prejudgment interest is *per se* unallowable in personal injury actions. *Nicholson*, however, does not state such a broad rule. Indeed, the *Nicholson* court noted that prejudgment interest is recoverable at common law in cases, including personal injury cases, where the damages are "liquidated or liquidable," *id.* at 608, 405 N.W.2d at 338, that is, where the amount is either liquidated "or determinable by reference to some objec-

---

[6] As may be seen below, however, the record's silence on the facts underlying the award requires us to remand the question of prejudgment interest to the trial court for further proceedings.

158

tive standard." *Johnson v. Pearson Agri-Systems, Inc.*, 119 Wis. 2d 766, 771, 350 N.W.2d 127, 130 (1984). And Konicki's claim in this case is just that: the amount she was seeking—an additional $100,000 from Allstate resulting from stacking the underinsured motorist coverages—was "liquidated or liquidable" within the meaning of *Nicholson* and *Johnson*.

In addition, the *Nicholson* court was considering a claim for recovery under § 807.01, STATS., which provides for prejudgment interest in cases where an offer of settlement is made and rejected and the offering party recovers a judgment greater than or equal to the amount specified in the offer. This is not such a case. Konicki bases her argument on § 628.46, STATS., which states:

> Unless otherwise provided by law, an insurer shall promptly pay every insurance claim. A claim shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss. . . . All overdue payments shall bear simple interest at the rate of 12% per year.

Konicki argues that our decision in *Fritsche v. Ford Motor Credit Co.*, 171 Wis. 2d 280, 491 N.W.2d 119 (Ct. App. 1992), controls the issue. She contends that we held in *Fritsche* that prejudgment interest at twelve percent under § 628.46, STATS., is appropriate in cases where an injured plaintiff sues to recover uninsured motorist benefits from his or her insurer. We did recognize the applicability of the statute to such claims in *Fritsche*. However, we also quoted the language in § 628.46(1) indicating that the statute does not apply when "the insurer has reasonable proof to establish that it is not responsible for the payment." *Id.* at 303, 491 N.W.2d at 128. And, considering that language and

the trial court's failure to make any findings with respect to the insurer's assertion that it had "reasonable proof [of] non-responsibility," we remanded the case to the trial court to make that determination.[7] *Id.* at 305-06, 491 N.W.2d at 129.

We reiterated the statutory "reasonable proof" exception—citing *Fritsche* for the proposition—in a more recent case, *United States Fire Ins. Co. v. Good Humor Corp.*, 173 Wis. 2d 804, 496 N.W.2d 730 (Ct. App. 1993), and went on to affirm the trial court's determination that, because "the coverage issue was fairly debatable," the insurer must be considered to have had the required "proof" of non-responsibility. As a result, we concluded that the trial court had properly denied the insured's claim for twelve percent interest under § 628.46, STATS. *Id.* at 835-36, 496 N.W.2d at 741-42.

In this case, as we have said, the parties' briefs have not directed us to any decision by the trial court—whether from the bench or in its two written opinions—considering whether Allstate had "reasonable proof to establish that it [was] not responsible for . . . payment" of the additional benefits at appropriate times during this controversy. We are thus compelled, as we were in *Fritsche*, to remand to the trial court for a determination of the existence of such proof, and thus the applicability of § 628.46, STATS., to Konicki's prejudgment interest claim. The court may, if it deems appropriate, take additional evidence on the issue.

Finally, Allstate argues that if prejudgment interest is to be awarded under any standard, it cannot be

---

[7] We, of course, are prohibited by the constitution from making factual determinations. *See Wurtz v. Fleischman*, 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155, 159 (1980).

held to run from the date of the settlement, as the trial court ruled in this case. The company contends that any such award must run, at the earliest, from July 27, 1992—the date the trial court decided to vacate the settlement on grounds that the coverages could be stacked. Because the trial court will have to determine an appropriate date for the running of interest should it determine on remand that § 628.46, STATS., is applicable to the parties' dispute over prejudgment interest, that issue is premature in the context of this appeal.

We therefore reverse the interest award and remand to allow the trial court to determine the applicability of § 628.46, STATS., in light of this opinion and, further, to consider (or reconsider) the date from which prejudgment interest—whether recoverable at common law *or* under the statute—should be deemed to run.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings consistent with this opinion. No costs are awarded to either party on this appeal.