RIXMANN, and others, Appellants, v. SOMERSET PUBLIC SCHOOLS, Respondents.

*No. 75–515. Submitted on briefs May 1, 1978.—Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 326.)

572

For the appellants the cause was submitted on the brief of *Robert R. Gavic* of Spring Valley.

For respondents, Somerset Public Schools, Mutual Service Insurance Company, and Harold Ammerman, the

cause was submitted on the brief of *Gary L. Bakke,* and *Doar, Drill, Norman, Bakke, Bell & Skow* of New Richmond.

For respondent, Thomas LeMire, the cause was submitted on the brief of *John W. Fetzner, Charles B. Harris,* and *Law Offices of John W. Fetzner, S.C.,* of Hudson.

For respondent, Robert Kieckhoefer, the cause was submitted on the brief of *James E. Garvey,* and *Garvey, Anderson, Kelly & Ryberg, S.C.,* of Eau Claire.

HANLEY, J. The following issues are presented on appeal:

1. Did the trial court err in limiting the recovery of damages for past medical expenses?

2. Did the trial court err in refusing to direct the verdict to hold the defendants, LeMire and Kieckhoefer, negligent and liable as a matter of law?

3. Did the trial court err in reducing the damages awarded by the jury to the limit set by sec. 895.43, Stats?

*Limitation on Past Medical Expenses*

During trial, a dispute arose as to what amount expended for medical treatment could be recovered as damages from the defendants. Ronald's father received payments from his insurer, Guardian Life, for most of the medical expenses incurred to the time of trial, and all the parties agreed that the amount spent by him which had not been reimbursed by the insurer was $656.33. However, this agreement was reached after the trial court concluded that the plaintiffs could not recover the amount which had been reimbursed by the insurance company. As a result of the court's ruling and the stipulation, evidence of the total amount expended for Ronald's pre-trial medical expenses was never offered or received into evidence.

The plaintiffs assert two grounds on which they claim to be entitled to recover those amounts paid by the in-

surance company. On the one hand, the plaintiffs argue that Guardian Life was subrogated by operation of law to the right to recover from the defendants that amount which it paid to Ronald's father for medical expenses, and that the assignment from Guardian operated to reinvest those rights in the plaintiffs. Thus, it is argued, the plaintiffs possessed the entire cause of action for medical expenses and could recover all sums expended for Ronald's medical treatment. Alternatively, the plaintiffs argue that Ronald's father was entitled to recover damages equalling all medical expenditures, regardless of reimbursement, under the collateral source rule.

The respondents, of course, argue that the plaintiffs cannot recover the reimbursed medical expenses under either theory. With respect to effect of the assignment, they argue first that no subrogation occurred under the father's policy so as to give any substantive effect to the assignment, and second that the assignment was not timely so as to permit the plaintiffs to enforce the rights contained therein. With respect to the collateral source rule, the respondents argue that if the court has not in fact done so already, the collateral source rule should be expressly abolished on this appeal.

There can be little doubt that confusion exists as to the operation of subrogation and the collateral source rule in personal injury cases. *See, e.g., Fietzer v. Ford Motor Co.,* 439 F. Supp. 1346 (E.D. Wis. 1977) ; Barron, "Heifetz" and the Collateral Source Rule, 48 *Wis. Bar Bull.* 27 (June, 1975). Much of this confusion can be traced to language found in the opinion of *Heifetz v. Johnson,* 61 Wis.2d 111, 211 N.W.2d 834 (1973).

In *Heifetz,* the plaintiff was injured in an automobile accident which occurred in 1968. The plaintiff received two thousand dollars for medical expenses from his liability insurer, in return for which he executed a "subrogation receipt and assignment" to the insurer. Heifetz

then commenced a personal injury action against the driver of the other vehicle shortly before the running of the statute of limitations. The plaintiff's insurer was not joined as a co-plaintiff. After the statute of limitations had run, the defendants moved for summary judgment on the grounds that an indispensable party, the insurer, was not a party to the action, and that because the statute of limitations had run on the insurer's subrogation rights, the entire cause of action was barred. This court affirmed the trial court's denial of summary judgment, reasoning that because the statute of limitations barred the insurer from enforcing its rights, it no longer had an interest in the plaintiff's cause of action and thus was no longer an indispensable party.

The court then commented on the effect of an insurer's payment of medical expenses to the injured party's cause of action against the tortfeasor:

"Acceptance of payment from an insurer operates as an assignment of the claim to that extent whether or not the policy contains a subrogation agreement. The plaintiff loses his right to sue for any amount received from his insurer." *Heifetz v. Johnson, supra* at 124.

It has been noted that this language could, under a narrow interpretation, be taken to mean that in any case in which the injured party has been compensated for his loss by his insurer, subrogation in favor of the insurer occurs. Thus, it might be argued that the collateral source rule, which provides that a personal injury claimant's recovery is not to be reduced by the amount of compensation received from other sources such as insurance, has been eliminated in this state. Piper, "Problems in Third Party Action Procedure Under the Wisconsin Worker's Compensation Act," 60 Marq. L. Rev. 91, 97 (1976).

To support the above-quoted language in *Heifetz,* the court cited only *Patitucci v. Gerhardt,* 206 Wis. 358, 240

N.W.2d 385 (1932). In *Patitucci*, this court distinguished indemnity insurance contracts and investment insurance contracts for the purpose of applying the rule of subrogation by operation of law:

"The rule governing subrogation in the case of fire insurance risks is well settled. The payment of a loss by the insurer operates as an assignment to the latter of the rights of the insured against the tortfeasor responsible for the destruction of the property. . . . This rule applies whether the contract expressly provides for subrogation or not. In the event of a partial discharge of the loss, there is an assignment to the extent of the payment. . . .

"The doctrine is based upon the theory that a contract of fire insurance is a contract of indemnity, and that the position of the insurer in such a contract is analogous to that of a surety. . . . *On the other hand, an accident insurance policy, in the absence of any express provision in the policy to the contrary, is held to be an investment contract in which the only parties concerned are the insurer and the insured or the beneficiary. Consequently, in the case of such contracts the insurance company is not subrogated to the rights of the insured, and is not a necessary party by reason of its having paid the amount of the insurance. . . .*" *Patitucci v. Gerhardt, supra* at 160–61. (Emphasis supplied, citations omitted.)

In *Patitucci*, the plaintiff received payments from his insurer under an automobile collision policy which the court likened to fire insurance policies as being a contract for indemnity: "Both are for the purpose of indemnifying the assured against such loss as he may have sustained by reason of a specified hazard. Neither falls within the class of accident policies which may legitimately be regarded as investment contracts." *Patitucci v. Gerhardt, supra* at 361. Thus, *Patitucci*, where the collision insurer was subrogated *pro tanto* as a matter of law, was proper authority for the language in *Heifetz* insofar as it held that subrogation, occurring under the terms of the policy in question, prohibited the plaintiff

from recovering from the defendant that amount which had been paid by the insurer under the collateral source rule.

A review of other decisions indicates that *Heifetz* should not be interpreted as holding that under all circumstances subrogation occurs when an injured party's insurer makes a payment to him and, concomitantly, that the collateral source rule has been abandoned.

The distinction between investment and indemnity insurance was early made by this court in *Gatzweiler v. Milwaukee Electric Railway & Light Company*, 136 Wis. 34, 116 N.W. 633 (1908). There the court concluded that the casualty insurance contract in issue was an investment contract, payments under which would not automatically result in subrogation: "[S]uch a policy is an investment contract giving to the owner or beneficiary an absolute right, independent of the right against any third party responsible for the injury covered by the policy. . . ." *Gatzweiler v. Milwaukee Electric Railway & Light Co., supra* at 39.

In *Campbell v. Sutliff*, 193 Wis. 370, 214 N.W. 374 (1927), the court held that the trial court did not err in instructing the jury that, in assessing the plaintiff's damages resulting from injuries sustained when he stepped into an open coal shute trap door, they should disregard the fact that he received payments under an accident insurance policy and the fact that his employer continued to pay his salary during the time he was disabled. With respect to payments received under the insurance policy, the court, citing *Gatzweiler*, stated:

"It is equally clear that the defendant is not entitled to have the damages reduced because the plaintiff had purchased and paid for the right to have indemnity in case he sustained accidental injuries. The sums paid for such insurance are in the nature of an investment, which, like other investments made by the plaintiff, ought not to inure to the benefit of the defendant. The only par-

ties interested in such a contract of insurance are the plaintiff and the insurer." *Campbell v. Sutliff, supra* at 374–75.

More recently, in *McLaughlin v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 31 Wis.2d 378, 395–96, 148 N.W.2d 32 (1966), the court cited 22 Am. Jur.2d *Damages*, sec. 207 (1965) for the proposition that a "plaintiff's recovery will not be reduced by the fact that the medical expenses were paid by some source collateral to the defendant, such as by a beneficial society, by members of the plaintiff's family, by the plaintiff's employer *or by an insurance company.*" Accordingly, the plaintiff, a priest, was permitted to recover the value of his medical treatments even though his Order had voluntarily paid them; no subrogation occurred and the collateral source rule was held applicable.

In *Merz v. Old Republic Insurance Co.*, 53 Wis.2d 47, 53–54, 191 N.W.2d 876 (1971), the court, noting that "Wisconsin has long been committed to the collateral source rule," concluded that Medicare was similar to private health insurance so as to permit the plaintiff to recover for all medical expenses even though a portion of them had been paid by the federal government.

Finally, only a year before the *Heifetz* decision, this court further expanded the scope of the collateral source rule so as to include situations where gratuitous medical services were provided or paid for by the state. In *Thoreson v. Milwaukee & Suburban Transport Corp.*, 56 Wis.2d 231, 243, 201 N.W.2d 745 (1972), the court noted that when medical or nursing services are rendered gratuitously to one who is injured, the injured party is, in many cases, entitled to recover the value of those services from the tortfeasor on the rationale that "the recovery has a penal effect on a tort-feasor and the tortfeasor should not get the advantage of gratuities from third parties." *Thoreson v. Milwaukee & Suburban*

*Transport Corp., supra* at 243. When the court later noted that injured persons who have all or part of the medical expenses paid by his or her insurance company may likewise recover all medical expenses because an investment *quid pro quo* is involved, *Thoreson v. Milwaukee & Suburban Transport Corp., supra* at 244, the court might have correctly pointed out that the rationale in these instances is similar to that underlying the rule permitting recovery of the value of gratuitously rendered medical services: the injured party's investment in insurance should not inure to the benefit of the tortfeasor. *Campbell v. Sutliff, supra* at 375; 22 Am. Jur.2d, *Damages,* sec. 210 (1965); Annot., 77 ALR3d 415, sec. 3 (1977) and cases cited therein.

The above cases, decided before *Heifetz,* indicate that the collateral source doctrine was well entrenched in Wisconsin law and that the *Heifetz* court did not intend, in one short paragraph, to abolish the doctrine. Moreover, cases decided since *Heifetz* demonstrate that this court has not considered *Heifetz* as having that effect.

For example, in the recent case of *Karl v. Employers Insurance of Wausau,* 78 Wis.2d 284, 254 N.W.2d 255 (1977), this court held that the trial court did not err in refusing to reduce the judgment which awarded the plaintiff damages for medical expenses by that amount which had been paid by his insurer. There the defendant based its argument on *Heifetz* for the proposition that the acceptance of any payments by an injured party automatically gives the insurer a subrogated right to collect the amount from the tortfeasor. The court rejected this interpretation of *Heifetz,* stating:

"The defendants failed to produce the alleged contract of insurance between the Karls and their hospital insurer even though they had from the third day of December, 1970 until the time of trial to pursue the matter. Neither the trial court nor this court has been apprised of the nature of the particular insurance contract, whether

it had a subrogation clause, or whether subrogation was waived. Because of the state of the record we find no error in the refusal of the trial court to reduce the judgment by the amount of the alleged insurance recovery." *Karl v. Employers Insurance of Wausau, supra* at 302.

This language is important in two respects. First, by pointing to the lack of evidence giving the insurer a *contractual* right to subrogation, the court applied the traditional, pre-*Heifetz,* collateral source rule: "An accident insurance policy, in the absence of any express provision in the policy to the contrary, is held to be an investment contract . . . [under which] the insurance company is not subrogated to the rights of the insured [upon payment]." *Patitucci v. Gerhardt, supra* at 361. Second, the court indicated that the one seeking to prove subrogation has the burden of introducing evidence to that effect. *See also, Rennick v. Fruehauf Corp.,* 82 Wis.2d 793, 264 N.W.2d 264 (1978).

The insurance contract here in question was never made a part of the record, though the defendants argue and the plaintiffs concede that it did not contain a subrogation clause. On the basis of *Karl* and *Rennick, supra,* and other pre-*Heifetz* decisions, we are satisfied that the insurer was never subrogated *pro tanto* to the father's right to recover medical expenses and that the collateral source rule was applicable so as to permit him to recover the total reasonable value of the medical treatments rendered to Ronald by the time of trial.

The defendant, Kieckhoefer, contends that this court in any event should abolish the collateral source rule primarily on the grounds that a plaintiff who is injured by the tort of another should not be allowed a double recovery for such items as medical expenses. This argument has been previously considered and rejected by this

court.  *See, e.g., Merz v. Old Republic Insurance Co.,
supra* at 53–54.  We decline to nullify the rule in this case.
[3]
Since the record does not disclose the total value of the
medical services here in question, they will have to be
determined on remand.

*Denial of Motions for Directed Verdict*

At the close of all the testimony, but before the sub-
mission of the cause to the jury, the plaintiffs moved for
a directed verdict finding that the defendant teacher,
Ammerman, the defendant students, LeMire and Kieck-
hoefer, and the school district were negligent and that
their negligence had combined to bring about Ronald's
injuries.  The trial court granted the motion with respect
to Ammerman, but reserved ruling on the motion as to
the other defendants until after the jury returned its
verdict.  When the jury returned its verdict finding only
Ammerman and the school district negligent, the plain-
tiffs renewed their motions with respect to the defendant
students.  At this time, the trial court denied plaintiffs'
motions.

The plaintiffs argue that the facts relating to the con-
duct of LeMire and Kieckhoefer are uncontested, and that
those facts establish their causal negligence as a matter
of law.  Thus, the plaintiffs argue that the trial court
erred in denying their motions for directed verdicts
against these students.

There is no dispute as to the facts surrounding the
boys' conduct immediately before the beaker of burning
alcohol was spilled.  The boys were members of a sopho-
more science class which was divided into two groups to
conduct the experiment.  Ronald was in one group with
LeMire and Kieckhoefer.  During the experiment, Kieck-
hoefer used a plastic spoon to pour some of the heated
alcohol onto the table.  LeMire lit the alcohol with a
match acquired from Ronald.  When the plastic spoon
caught fire, Kieckhoefer unsuccessfully attempted to

extinguish it by waving it in the air. He then placed the flaming spoon in the beaker of water, but in doing so ignited the alcohol fumes from the other beaker. Ammerman, who was then helping the other group of students on the other side of the room, saw the flames, came over and attempted to extinguish the flames by covering the beaker with a wire-bound notebook. This caused the beaker to tip, and the flaming alcohol spilled onto the table and, in turn, into Ronald's lap.

All three boys admitted that they knew alcohol was highly flammable. Ammerman and two other students testified that Ammerman warned the class that alcohol was flammable and that they should not have any flame near the substance. Nevertheless, Kieckhoefer stated that he placed the alcohol on the table with the intent that someone would light it, and LeMire admitted setting fire to the puddle of alcohol. Ronald stated he gave the matches to LeMire. Ronald also stated that during this entire time, he did not leave his chair, which was drawn up to the edge of the table, to avoid the danger posed by the burning alcohol, nor did he inform the teacher of the fire.

The defendants, LeMire and Kieckhoefer, argue that because the evidence did not show that they appreciated the fact that fumes emitted from heated alcohol were flammable, and that because they were average or below average students and bored with the experiment, a jury question was presented as to whether they acted with "that degree of care that is ordinarily exercised by a child of the same age, capacity, discretion, knowledge and experience under the same or similar circumstances." *Brice v. Milwaukee Automobile Insurance Co.*, 272 Wis. 520, 525, 76 N.W.2d 337 (1956).

It may be true, as the trial court stated, that these students "weren't the brightest." But all three of the students were bright enough to know that alcohol was

flammable and that they were not supposed to have open flames near it. On the basis of these admitted and undisputed facts, we conclude that the students, by collaborating to set fire to the puddle of alcohol on the table, did not conform their conduct to that which would be expected of a similarly situated child of the same age and with the same capacity, discretion, knowledge and experience in creating the initial fire. The evidence does not reasonably admit an alternate conclusion. Thus, the trial court erred in not holding these students, Ronald included, negligent as a matter of law.

The plaintiffs also contend that the trial court erred in not finding as a matter of law the students' negligence a cause of Ronald's injuries. The concept of causation as it pertains to negligence cases in this state has been described as follows:

"In this state negligence is causal if it is a substantial factor in producing the injuries or death complained of. The cause of an accident is not determined by its most immediate factor. The doctrine of proximate cause in the strict sense of that term has been abandoned for the substantial-factor concept of causation to properly express 'cause' or 'legal cause.' Consequently, there may be several substantial factors contributing to the same result. The contribution of these factors under our comparative negligence doctrine are all considered and determined in terms of percentages of total cause. It follows that, in resolving questions as to causation in the case before us, we will apply what this court has termed '. . . the substantial-factor concept of causation, under which there may be several substantial factors contributing to the same result. . . .'" *Sampson v. Laskin,* 66 Wis.2d 318, 325–26, 224 N.W.2d 594 (1975).

The defendants, LeMire and Kieckhoefer, contend that the acts of the teacher, Ammerman, constituted a superceding cause of Ronald's injuries. In *Diener v. Heritage Mutual Insurance Co.,* 37 Wis.2d 411, 417–18, 155 N.W.2d 37 (1967), this court noted that in order for an act to be a "superceding cause," it must first be an "intervening

force." Following the *Restatement (Second) of Torts,* the court defined an intervening force as being "one which actively operates in producing the harm to another after the actor's negligent act or omission has been committed." *Restatement (Second) of Torts,* sec. 441(1) at 465. A superceding cause was defined as being "an act of a third person . . . which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Restatement (Second) of Torts,* sec. 440 at 465. When the intervening act of a third person (Ammerman) is itself done in a negligent manner, as is the case here, this court has relied on the criteria set forth in *Restatement (Second) of Torts,* sec. 447, to determine whether that act is a superceding cause of the harm. *Diener v. Heritage Mutual Insurance Co., supra* at 419; *Dombrowski v. Albrent Freight & Storage Corp.,* 264 Wis. 440, 59 N.W.2d 465 (1953). This section states:

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

The determination of whether a negligent act is a superceding cause is a question of law which is generally decided by the trial court. *Merz v. Old Republic Insurance Co., supra* at 57.

In the instant case, the trial court made no such determination. Nevertheless, we conclude that Ammerman's

actions did not amount to a superceding cause of Ronald's injuries. The boys knew at the time they set fire to the puddle of alcohol that Ammerman would make an effort to extinguish the flames. The manner in which he attempted to do so, though not the most effective or prudent, was not extraordinarily negligent. This court has stated that, "in order for the intervening act of negligence to constitute a superceding cause it must be such that the conscience of the court would be shocked if the first actor were not relieved from liability." *Merlino v. Mutual Service Casualty Insurance Co.*, 23 Wis.2d 571, 581, 127 N.W.2d 741 (1964). It does not shock the conscience of this court to hold the defendant students liable for their negligence; indeed, it would be shocking if the court were to relieve them of liability.

Therefore, on the basis of this record, we hold that the negligence of the students—Kieckhoefer, LeMire as well as Ronald himself—was a substantial factor in bringing about Ronald's injuries. These three, to various degrees, joined forces to create an open flame in the proximity of a heated beaker of alcohol. Once this condition was created, none of the boys alerted Ammerman to the danger, nor did Ronald take even the most elementary steps to remove himself from the scene. Rather, Kieckhoefer increased the danger by setting fire to the spoon and then to the beaker of alcohol. Though Ammerman's negligence intervened at this juncture, it did not supercede the boys' negligence in bringing about Ronald's injuries.

■

Because liability must be reapportioned in light of our conclusions above, we reverse and remand this case for a new trial on this as well as the damage issue. In view of the above, we do not reach the remaining issue concerning the constitutionality of sec. 895.43, Stats.

*By the Court.* Judgment reversed and remanded for further proceedings not inconsistent with this opinion.