Trisha A. TAYLOR, Plaintiff-Respondent,

v.

GREATWAY INSURANCE COMPANY and Ross H. Hermanson, Defendants,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Appellant.†

Court of Appeals

*No. 99–1329. Submitted on briefs November 18, 1999.—Decided February 17, 2000.*

## 2000 WI App 64

(Also reported in 608 N.W.2d 722.)

†Petition to review granted.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David J. Pliner* of *Corneille Law Group, L.L.C.* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James H. Fowler, III* of *James H. Fowler Law Office* of Janesville.

Before Dykman, P.J., Eich and Roggensack, JJ.

¶ 1. ROGGENSACK, J. American Family Mutual Insurance Company appeals a judgment of the circuit court determining that Trisha Taylor can recover under the underinsured motorist (UIM) coverage provisions of two of its auto policies. Taylor argues, and the circuit court agreed, that the reducing clauses of both policies created illusory coverage; and therefore, her reasonable expectations mandate coverage. Because we conclude that Ross Hermanson's vehicle was not an underinsured motor vehicle as defined in the policies, each of which provides underinsured motorist benefits in an amount greater than the statutory minimum for the purchase of automobile liability

insurance in Wisconsin, we reverse that portion of the judgment which awarded UIM benefits.

¶ 2. American Family also claims that it was error for the circuit court to award Taylor accidental death benefits under both policies because accidental death coverage is an investment contract and WIS. STAT. § 631.43(1) (1993–94)[1] requires stacking of only those contracts which promise to indemnify for the same loss. Because we conclude that accidental death provisions found in both policies are promises to indemnify the insured against the same loss, the accidental death of the insured in an auto accident, we affirm that portion of the judgment allowing recovery under both policies.

## BACKGROUND

¶ 3. Paul Taylor was killed when his vehicle was struck by a vehicle driven by Ross Hermanson. Hermanson had $50,000 of liability coverage under a policy issued by Greatway Insurance Company. The damages incurred by the Taylors were stipulated to exceed $160,000. Trisha Taylor, Paul's wife, settled her claims against Hermanson and Greatway for the policy limits, and then she sued American Family under the UIM provisions of the American Family policies the Taylors had purchased.

¶ 4. The Taylors owned two auto policies issued by American Family. Both policies included UIM coverage, each with limits of $50,000. Both policies defined an underinsured motor vehicle by comparing the amount of liability coverage which had been purchased by the tortfeasor with the amount of UIM coverage

---

[1] All references to the Wisconsin Statutes are to the 1993–94 version unless otherwise noted.

purchased by the insured. Both policies defined an underinsured motor vehicle as "a motor vehicle which is insured by a liability bond or policy at the time of the accident which provides bodily injury liability limits less than the limits of liability of this Underinsured Motorists coverage." Both policies also contained a reducing clause which purported to reduce the limits of underinsured motorist coverage by "[a] payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle."

¶ 5.   In denying UIM benefits, American Family contended that Hermanson was not driving an under-insured motor vehicle according to the American Family policies' definition because the limits of Hermanson's liability policy ($50,000) were not less than the limits of each American Family policy ($50,000). Taylor argued that the circuit court could look beyond the policy definition of underinsured motor vehicle, if that definition, in combination with other provisions of the policy, created illusory coverage. The circuit court agreed with Taylor and concluded that the reducing clause in the policies created illusory cover-age. Therefore, it allowed Taylor to recover the policy limits of $50,000 under each policy.

¶ 6.   Taylor also made a claim for accidental death benefits under both policies, each of which had a face amount of $5,000 coverage. American Family paid the $5,000 limit from one policy. However, it refused to pay the limit under the other policy, contending that coverage for accidental death benefits could not be stacked because of an "other insurance" clause in both

policies.[2] The circuit court concluded that the other insurance clause was not enforceable because WIS. STAT. § 631.43(1) prohibits other insurance clauses from reducing the aggregate protection of the insured when two or more policies promise to indemnify an insured against the same loss. The circuit court rejected American Family's argument that accidental death benefits are investment contracts, not promises to indemnify, and stacked the policies. American Family appeals.

## DISCUSSION

### Standard of Review.

¶ 7. The resolution of whether Hermanson's vehicle was an underinsured motor vehicle under the policies requires us to interpret the language of the policies. The interpretation of an insurance policy is a question of law which we decide *de novo*. *See Filing v. Commercial Union Midwest Ins. Co.*, 217 Wis. 2d 640, 644, 579 N.W.2d 65, 66 (Ct. App. 1998). Whether the accidental death benefit provision set forth in the policies promises to indemnify an insured against the same loss under WIS. STAT. § 631.43(1) is a question of statutory interpretation which we also review *de novo*. *See State v. Beiersdorf*, 208 Wis. 2d 492, 504, 561 N.W.2d 749, 755 (Ct. App. 1997).

---

[2] The other insurance clause in the policies provided, "If any insured person under this endorsement is also covered under another endorsement of the same kind, issued by us, any payment for loss under the other endorsement shall reduce to the extent of that payment, our obligation under this endorsement."

**Underinsured Motorist Coverage.**

¶ 8.   We interpret an insurance policy's ambiguities in favor of coverage, while coverage exclusion clauses are narrowly construed against the insurer. *See Guenther v. City of Onalaska*, 223 Wis. 2d 206, 210–11, 588 N.W.2d 375, 377 (Ct. App. 1998), *review denied*, 230 Wis. 2d 272, 604 N.W.2d 571. "Words or phrases are ambiguous when they are susceptible to more than one reasonable construction." *Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 811, 456 N.W.2d 597, 598–99 (1990). When the terms of an insurance policy are unambiguous, we will not rewrite the policy by construction. *See id.* However, when an ambiguity is present, we attempt to determine what a reasonable person in the position of the insured would have understood the words of the policy to mean. *See Kaun v. Industrial Fire & Cas. Ins. Co.*, 148 Wis. 2d 662, 669, 436 N.W.2d 321, 324 (1989); *Engstrom v. MSI Ins. Co.*, 198 Wis. 2d 195, 200, 542 N.W.2d 481, 483 (Ct. App. 1995). The supreme court has also directed that the interpretation of UIM provisions should be consistent with the purpose of UIM coverage, which it has stated "is effective where there is a tortfeasor with liability coverage inadequate in amount for the injuries caused." *Kaun*, 148 Wis. 2d at 668, 436 N.W.2d at 323 (citing *Schwochert v. American Family Mut. Ins. Co.*, 139 Wis. 2d 335, 346, 407 N.W.2d 525, 530 (1987)).

¶ 9.   American Family contends that Taylor may not recover based on the holdings of *Smith* and *Krech v. Hanson*, 164 Wis. 2d 170, 473 N.W.2d 600 (Ct. App. 1991), because one must first determine whether the tortfeasor meets the definition of an underinsured motorist before examining whether other clauses in the

710

policies affect UIM coverage. *See Smith*, 155 Wis. 2d at 814, 456 N.W.2d at 600. Taylor argues that under *Wood v. American Family Mutual Insurance Co.*, 148 Wis. 2d 639, 436 N.W.2d 594 (1989), *overruled on other grounds, Matthiesen v. Continental Casualty Co.*, 193 Wis. 2d 192, 532 N.W.2d 729 (1995), *Hoglund v. Secura Insurance Co.*, 176 Wis. 2d 265, 500 N.W.2d 354 (Ct. App. 1993) and *Allstate Insurance Co. v. Gifford*, 178 Wis. 2d 341, 504 N.W.2d 370 (Ct. App. 1993), we may look beyond the policy definition of an underinsured motor vehicle. Taylor contends we may do so when the UIM coverage afforded under the terms of the policy does not meet the reasonable expectations of the insured.

¶ 10.    In *Wood*, the supreme court construed UIM coverage under a policy that attempted to reduce its payout by amounts payable by the tortfeasor. In concluding that there was UIM coverage, the court reasoned, "we believe that a reasonable insured expects to be protected against a loss caused by another that is not covered by the underinsured driver's liability coverage." *Wood*, 148 Wis. 2d at 654, 436 N.W.2d at 600. In so doing, the court defined UIM coverage by comparing the insured's damages to the liability coverage afforded by the tortfeasor. It did so to avoid illusory coverage: "If the [insurer] is allowed to offset its $100,000 liability to the [insured] under each policy by the $25,000 paid by the tortfeasor's insurance carrier, the [insurer] will not be providing the $100,000 of UIM benefits it indicated it would pay on the declarations page of each policy." *Id.* at 653, 436 N.W.2d at 600. Otherwise, the court stated, "an underinsured liability limit is an illusion because an insured will never be entitled to recover up to that limit." *Id.* (citation omitted).

711

¶ 11.   In *Smith*, decided one year after *Wood*, the supreme court again addressed UIM coverage. There, after Smith recovered the policy limit of $50,000 from the tortfeasor's insurer, she sought to recover UIM benefits under her own policy, which also had a $50,000 UIM policy limit. Smith's policy defined underinsured motor vehicle as a vehicle "to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage." *Smith*, 155 Wis. 2d at 811, 456 N.W.2d at 599. That definition was the major focus for the court's reasoning, which led it to the conclusion that there was no UIM coverage available because the policy definition of an underinsured motorist was unambiguous and it precluded UIM coverage for Smith.[3] *See id.* In so holding, it concluded that a policy could accomplish a reduction in the amount of UIM coverage stated on the declaration page through the way in which it defined an underinsured motor vehicle, and it rejected Smith's argument that to strictly construe the definition would render the UIM coverage illusory under the holding of *Wood*. The supreme court declined to examine whether the UIM coverage was illusory because it concluded that whether an underinsured motorist was involved in the accident must be determined *before* a court could analyze other provisions in the policy and their potential effects on UIM coverage. *See id.* at 814, 456 N.W.2d at

---

[3] The policy definition of an underinsured motor vehicle was not discussed in *Wood v. American Family Mutual Insurance Co.*, 148 Wis. 2d 639, 436 N.W.2d 594 (1989), *overruled on other grounds, Matthiesen v. Continental Casualty Co.*, 193 Wis. 2d 192, 532 N.W.2d 729 (1995), and apparently it was not at issue. *See Smith v. Atlantic Mut. Ins. Co.*, 155 Wis. 2d 808, 814, 456 N.W.2d 597, 600 (1990).

600; *see also Krech,* 164 Wis. 2d at 177, 473 N.W.2d at 603.

¶ 12.   Therefore, under *Smith,* we must first decide that Hermanson did drive an underinsured motor vehicle, before we may address whether the reducing clause results in illusory coverage. In reviewing the policies, we note that the language used to define "underinsured motor vehicle" in *Smith* is virtually identical to the language in the American Family policies and that *Smith* held this language was unambiguous. *See Smith,* 155 Wis. 2d at 811, 456 N.W.2d at 599. However, *Smith* involved only one policy. Here, Taylor seeks to recover under two policies. If the limits of those policies are stacked, the limits of Hermanson's liability policy ($50,000) would be less than the limits of Taylor's combined policies ($100,000).

¶ 13.   We recently addressed stacking issues in *Krech* and in *Engstrom.* In *Krech,* the tortfeasor's policy contained a liability limit of $100,000 and Krech was insured under two policies, each having UIM coverage of $100,000. In *Engstrom,* the tortfeasor had two policies, one of $25,000 and one of $100,000. Engstrom had UIM coverage, defined as in *Smith,* of $50,000. In both cases, we declined to stack policies, either of the insured or of the tortfeasor, before deciding whether the tortfeasor met the definition of an underinsured motorist on the coverage issue. *See Krech,* 164 Wis. 2d at 172–73, 473 N.W.2d at 601; *Engstrom,* 198 Wis. 2d at 203, 542 N.W.2d at 484. Therefore, guided by *Krech* and *Engstrom,* we conclude that each of Taylor's policies must be examined individually to determine whether Hermanson falls within the policies' definition of an underinsured motorist. We conclude he does not. However, that does not end our inquiry because we are asked to apply *Hoglund* and *Gifford,* based on the con-

713

tention that affording UIM coverage is the reasonable expectation of Taylor because her injuries are greater than Hermanson's liability coverage.

¶ 14. In *Hoglund*, we made a further refinement of UIM jurisprudence when we considered whether a definition of an underinsured motor vehicle, which was on all fours with the *Smith* definition, controlled the UIM coverage question when the policy limits of UIM coverage were $25,000, an amount identical to the minimum amount of liability insurance one could purchase in Wisconsin. The insurer in *Hoglund*, argued that *Krech* and *Smith* dictated that we determine whether a tortfeasor drove an underinsured motor vehicle by examining only the policy definition, and if that definition led us to conclude that the tortfeasor did not, we were precluded from deciding whether coverage was illusory due to some other circumstance. We disagreed. Because the statutes required that one who chose to purchase liability insurance in Wisconsin must purchase at least $25,000 of coverage and the policy at issue had a limit of $25,000 for UIM coverage, Hoglund would never have been entitled to recover any amount of UIM benefits for policies written in Wisconsin. We held that this result did not comport with the reasonable expectations for UIM coverage, which coverage should have been provided in at least some conceivable circumstance.[4] Therefore, we concluded that UIM coverage was illusory and contrary to public policy. *See Hoglund*, 176 Wis. 2d at 270, 500 N.W.2d at 356. And in *Gifford*, we followed *Hoglund* when we compared the stated UIM benefits with the minimum liability insur-

---

[4] If the tortfeasor had insurance issued in another state where less than $25,000 of liability insurance could be purchased, collection would have been possible.

714

ance one can purchase under the statutes.[5] *See Gifford*, 178 Wis. 2d at 349–50, 504 N.W.2d at 373–74.

¶ 15. In harmonizing *Wood*, *Smith*, *Krech*, *Hoglund*, and *Gifford*, we conclude that where a policy provides a definition of an underinsured motor vehicle that compares an insured's UIM policy limits to a tortfeasor's policy limits and the insured's policy limit is more than the statutory minimum found in WIS. STAT. § 344.33(2), then we will not review whether a reducing clause within the policy makes recovery of those UIM benefits illusory. However, we will examine whether a reducing clause makes recovery of those UIM benefits illusory when the insured's policy provides the same UIM benefits as the statutory minimum amount of liability insurance a driver may purchase in Wisconsin. In statutory minimum cases, a definition of underinsured motor vehicle which compares the insured's UIM limits with the tortfeasor's liability limits is against public policy because under those circumstances, the insured will have paid a premium for a type of coverage that will never be available, if the tortfeasor purchased insurance in Wisconsin. As a matter of law, that is a result contrary to the reasonable expectations of an insured.

¶ 16. Therefore, because each American Family policy in question contained a higher amount of UIM coverage than the amount which was the statutory minimum amount of liability insurance one may

---

[5] In *Allstate Insurance Co. v. Gifford*, 178 Wis. 2d 341, 504 N.W.2d 370 (Ct. App. 1993), we remanded the cause to have the circuit court determine the reasonable expectations of the insured, as the circuit court had not reached that issue prior to appeal.

715

purchase in Wisconsin, we are compelled to follow *Krech* and *Smith* instead of *Hoglund* and *Wood*. Accordingly, we conclude that Hermanson's vehicle was not an underinsured motor vehicle, as defined by the American Family policies because Hermanson's liability limit was equal to, not less than, the limit of UIM coverage Taylor purchased, which in turn, was an amount greater than the statutory minimum required by WIS. STAT. § 344.33(2).[6] Having determined that the vehicle is not underinsured, we are precluded from reaching the issue of whether the reducing clause created illusory coverage. Accordingly, we reverse that portion of the judgment granting Taylor UIM benefits.

¶ 17.  We note that effective October 1, 1995, notice that UIM coverage is available must be given when liability insurance is sold or renewed, and if the insured chooses to purchase it, the statutory minimum is $50,000 per person and $100,000 per accident. *See* WIS. STAT. § 632.32(4m)(d) (1995–96). However, the statutes do not define "underinsured motorist," so insurance companies remain free to establish that definition by comparing the coverage of the tortfeasor with the UIM coverage of the insured, rather than defining an underinsured motorist through a comparison of the coverage of the tortfeasor with the damages sustained by the insured, which latter definition is the reasonable expectation of an insured. As the supreme court said in *Wood* and *Kaun*:[7] "UIM coverage is effective where

---

[6] In 1993, when the accident occurred, the statutory minimum amount of liability insurance required was $25,000 per person, per accident, as it remains today.

[7] We note that in *Kaun v. Industrial Fire & Casualty Insurance Co.*, 148 Wis. 2d 662, 436 N.W.2d 321 (1989), the definition of an underinsured motorist was the same as that which controlled the result of the court's decision in *Smith*. Apparently, no

716

there is a tortfeasor with liability coverage inadequate in amount for the injuries caused." *Kaun*, 148 Wis. 2d at 668, 436 N.W.2d at 323 (citation omitted); *see also Wood*, 148 Wis. 2d at 653, 436 N.W.2d at 600. A legislative definition of an underinsured motorist would be helpful.

## Accidental Death Benefits.

¶ 18. Taylor also made a claim for accidental death benefits under both policies; American Family responded by paying the $5,000 limit from one policy. However, it refused to pay the limit under the other policy contending that coverage for accidental death benefits could not be stacked because of an "other insurance" clause in both policies. Taylor argues that the other insurance clause was not enforceable because WIS. STAT. § 631.43(1) prohibits such clauses from reducing the aggregate protection of an insured when two or more policies promise to indemnify the insured against the same loss. American Family argues that accidental death benefits are investment contracts, not indemnity policies, and therefore, § 631.43(1)[8] does not apply.

---

one made the argument in *Kaun* that was made in *Smith* because the supreme court in *Kaun* defined an underinsured motorist by comparing the liability coverage of the tortfeasor with the damages of the insured, rather than by comparing the liability coverage of the tortfeasor with the UIM coverage of the insured, as the policy actually did there.

[8] WISCONSIN STAT. § 631.43(1) provides in relevant part:

> When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemni-

¶ 19.   American Family argues from several cases in which the court considered whether an insurer was entitled to equitable subrogation where a policy had no express subrogation clause, *e.g., Cunningham v. Metropolitan Life Insurance Co.*, 121 Wis. 2d 437, 360 N.W.2d 33 (1985); *Rixmann v. Somerset Public Schools*, 83 Wis. 2d 571, 266 N.W.2d 326 (1978). In those cases, the supreme court allowed an insurer equitable subrogation where the policy at issue was one of indemnity, rather than a type of investment policy. *See Cunningham*, 121 Wis. 2d at 440, 360 N.W.2d at 35; *Rixmann*, 83 Wis. 2d at 578, 266 N.W.2d at 330 (citation omitted).

¶ 20.   However,   neither   *Cunningham*   nor *Rixmann* interprets WIS. STAT. § 631.43(1), nor do they have any application to the issue before us. Additionally, in examining those cases, we do not find their reasoning helpful in determining whether § 631.43(1) applies to the promises to pay upon the accidental death of the insured, which are contained in the two policies at issue here. Those provisions state: "DEATH BENEFIT: We will pay maximum benefit shown in the declarations, if the insured person dies within 90 days of the accident."

¶ 21.   In interpreting WIS. STAT. § 631.43(1) previously, the supreme court has noted that the statute does not make reference to "indemnity policies," as American Family contends it must before it can be applied to the Taylors' policies. Instead of focusing on the type of policy, the supreme court focused on the type of loss and who was to receive compensation.

fication promised by the policies if there were no "other insurance" provisions.

> [T]he statute makes reference to policies which "promise to indemnify." As a consequence, the applicability of sec. 631.43(1) cannot be simply ascertained by resorting to historical definitions of indemnity and liability insurance. Rather, an analysis must be made on a case-by-case basis as to whether the particular liability policy at issue promises to indemnify the insured against the same loss as the other insurance policies involved.

*Wood*, 148 Wis. 2d at 651, 436 N.W.2d at 599 (footnote omitted). Therefore, in order to fall within *Wood's* construction of § 631.43(1), a policy provision must be a "promise to indemnify." "To indemnify" is defined as: "To reimburse (another) for a loss suffered . . . ." BLACK'S LAW DICTIONARY 772 (7th ed. 1999).

¶ 22.   Here, both policies promise first-party payment for the same loss (accidental death) caused by an automobile accident. Therefore, we conclude that the accidental death benefits in both policies are promises to indemnify the insured against the same loss, the accidental death of an insured as the result of an auto accident. Furthermore, it appears that the legislative intent underlying WIS. STAT. § 631.43(1) supports our conclusion. In *Welch v. State Farm Mutual Automobile Insurance Co.*, 122 Wis. 2d 172, 361 N.W.2d 680 (1985), the supreme court discussed the purpose of § 631.43(1) stating, "[t]he legislature clearly indicated its intent to invalidate attempts by insurers to avoid their statutory obligations to compensate the insured up to the aggregated policy limits of the insured's coverage by enacting the stacking doctrine." *Welch*, 122 Wis. 2d at 178, 361 N.W.2d at 683. And in *Wood*, the court again focused on the type of loss and the ownership of the policies under which there was a promise to pay. *See Wood*, 148 Wis. 2d at 648–51, 436 N.W.2d at 597–99.

719

And finally, interpreting the statute as American Family proposes would require us to ignore the legislative intent as determined in *Welch* and the analysis of *Wood* which focused on whether the ownership of the policies and the type of loss was the same. This we cannot do.

¶ 23.   Therefore, we conclude that the accidental death benefits found in the two American Family policies owned by the Taylors promise to indemnify the insured against the same loss and accordingly, we affirm that portion of the judgment allowing recovery under both policies.

## CONCLUSION

¶ 24.   Because we conclude that Hermanson's vehicle was not an underinsured motor vehicle as defined in the policies, each of which provides UIM benefits in an amount greater than the statutory minimum for the purchase of liability insurance in Wisconsin, we reverse that portion of the judgment of the circuit court awarding UIM benefits. We further conclude that accidental death provisions found in both policies are promises to indemnify the insured against the same loss, the accidental death of the insured in an auto accident. Therefore, we affirm that portion of the judgment allowing payment of accidental death benefits under both policies.

*By the Court.*—Judgment affirmed in part; reversed in part.

¶ 25.   DYKMAN, P.J. *(concurring).* The majority makes a formidable attempt to reconcile: *Smith v. Atlantic Mut. Ins. Co.,* 155 Wis. 2d 808, 456 N.W.2d 597 (1990); *Wood v. American Family Mut. Ins. Co.,* 148

720

Wis. 2d 639, 436 N.W.2d 594 (1989), *overruled on other grounds by Matthiesen v. Continental Cas. Co.*, 193 Wis. 2d 192, 532 N.W.2d 729 (1995); *Allstate Ins. Co. v. Gifford*, 178 Wis. 2d 341, 504 N.W.2d 370 (Ct. App. 1993); *Hoglund v. Secura Ins.*, 176 Wis. 2d 265, 500 N.W.2d 354 (Ct. App. 1993); and *Krech v. Hanson*, 164 Wis. 2d 170, 473 N.W.2d 600 (Ct. App. 1991). But the difficulty is that these cases are not reconcilable, with the result being that the case we decide today can only add to the confusion.

¶ 26. Though it is not the oldest case, I conclude that the starting place for underinsured motorist (UIM) issues is *Smith. Smith* has two virtues. It was decided by the supreme court, and therefore must be followed in any conflict with a court of appeals opinion. *See State v. Lossman*, 118 Wis. 2d 526, 533–40, 348 N.W.2d 159 (1984). It is also the latest supreme court case to address the issue, and the court of appeals follows the supreme court's practice of relying on the supreme court's latest pronouncement if decisions of that court are inconsistent. *See Bruns Volkswagen, Inc. v. DILHR*, 110 Wis. 2d 319, 324, 328 N.W.2d 886 (Ct. App. 1982).

¶ 27. *Smith* is important because it holds that UIM issues are, first of all, a matter of contract. *Smith*, 155 Wis. 2d at 810. Therefore, the language of the insurance policy in any UIM case is the predominant factor. *Smith* is also important because it holds that if a vehicle in an accident is unambiguously defined in an insurance policy as not an "underinsured motor vehicle," a court goes no further. *Id.* at 814.

¶ 28. *Smith* involved an accident in which the driver at fault carried liability limits of $50,000 and the injured person carried UIM coverage with policy limits of $50,000. *Id.* at 809–10. Thus, *Smith* did not consider

issues which arise when the tortfeasor has the lowest permitted Wisconsin liability limits, $25,000, and the injured person is covered by a policy with a UIM policy limit of $25,000. That case is *Hoglund.* In *Hoglund*, we acknowledged that the UIM clause in the relevant insurance policy was unambiguous, and that following *Smith*, the tortfeasor's vehicle was not underinsured. *Hoglund*, 176 Wis. 2d at 269.

¶ 29.    But the injured person in *Hoglund* argued that the policy's definition of underinsured motor vehicle, read in conjunction with WIS. STAT. § 344.33, the statute which requires auto policies issued in Wisconsin to have at least $25,000 liability coverage, resulted in illusory UIM coverage. *Id.* We agreed with that argument and concluded that the trial court should reform the policy to provide for whatever coverage the injured person reasonably expected. *See id.* at 272. That is where the trouble started.

¶ 30.    First, contractual language is ambiguous if it is susceptible to more than one reasonable interpretation. *See id.* at 268. By concluding that a UIM provision in an auto policy is unambiguous, we acknowledge that reasonable persons would not differ as to its meaning, and if that meaning excludes UIM coverage, no-one could have a reasonable expectation that coverage existed. Thus, our conclusion in *Hoglund* that the auto policy unambiguously precluded UIM coverage but the injured person had a reasonable expectation of coverage is illogical. It is an unreachable conclusion. It is the equivalent of an injured person asserting: "Had I read the policy, I would have known that coverage for underinsured motorists is often excluded, but I didn't read the policy, I expected more, and therefore I am entitled to more."

¶ 31. Second, our conclusion in *Hoglund* was prefaced on the assumption that the injured person could never recover under the auto policy's UIM coverage. *Id.* at 271. That assumption is untrue. In *Hoglund,* we considered accidents involving auto policies written in Wisconsin and the possibility of an accident occurring in Wisconsin involving a tortfeasor minimally insured under the law of another state. I agree with *Hoglund's* conclusion that where all participants in an accident in Wisconsin are insured under policies written in Wisconsin, and the injured person's UIM coverage is $25,000, the injured person can never recover under his or her UIM coverage.[1] But not all states mandate minimum auto policy liability limits of $25,000. For instance, Alabama's liability limit is $20,000, *see* ALA. CODE § 32–7–6.1(b)(2) (2000), Arizona's limit is $15,000, *see* ARIZ. REV. STAT. ANN. § 28–4009(A)(2)(a) (West 2000), Connecticut's limit is $20,000, *see* CONN. GEN. STAT. ANN. § 14–112(a) (West 2000), Florida's limit is $10,000, *see* FLA. STAT. ANN. § 324.021(7) (West 2000), and Illinois' and Iowa's limit is $20,000, *see* 625 ILL. COMP. STAT. ANN. 5/7–317(b)(3) (West 1999); IOWA CODE ANN. § 321A.21(2)(b) (West 2000). In all, eighteen states require minimum liability coverage of less than Wisconsin's $25,000 minimum limit. It is certainly possible that a Wisconsin motorist carrying $25,000 of UIM coverage would be involved in an accident in Wisconsin or elsewhere, where the tortfeasor was from one of these eighteen states, and carried liability insurance in the minimum required amount. The possibility of this occurring while travelling in one of these eighteen states is significant, and

---

[1] This is true if, as usual in UIM policies, the policy defines an underinsured motorist as a motorist whose liability limit is less than the limit of the UIM coverage.

cannot be ignored in considering whether UIM coverage is illusory.

¶ 32. The *Hoglund* court was faced with this problem. Its solution was to examine the injured party's insurance policy and conclude that it defined an *un*insured motor vehicle by comparing the liability limits of the tortfeasor's vehicle with the minimum required under Wisconsin law. *See Hoglund,* 176 Wis. 2d at 271. The court concluded: "This language renders an out-of-state vehicle with a liability policy limit less than $25,000 an *uninsured* vehicle. Therefore, [the injured party] cannot recover under the UIM provisions if the tortfeasor is an insured or uninsured out-of-state driver." *Id.*

¶ 33. Our conclusion in *Hoglund* is logically flawed. A particular policy can define both *under*insured and *un*insured motor vehicles in a myriad of ways. Because a policy defines an uninsured motor vehicle in a way that includes motor vehicles with some liability coverage does not mean that the UIM coverage must follow suit. It makes no sense to look to the definition of an *un*insured motor vehicle when looking at the coverage for *under*insured motor vehicles. The UIM coverage in the policy under consideration in *Hoglund* defined an underinsured motor vehicle as a vehicle "to which a bodily injury bond or policy applies at the time of the accident; however, its limit for bodily injury is less than the limit of liability for this coverage." That definition fits hand-in-glove the situation where an out-of-state tortfeasor with a liability policy limit of $10,000 injures a Wisconsin motorist with $25,000 of UIM coverage.

¶ 34. We could have concluded in *Hoglund* that the definitions of *un*insured and *under*insured vehicles in the policy led to a conclusion that the tortfeasor was

both an uninsured and an underinsured driver, thus necessitating the conclusion that the injured person was entitled to coverage under both sections of his policy. Though an unusual conclusion, it is required by the policy's language, and we have followed policy language where stranger conclusions resulted. In *Engstrom v. MSI Ins. Co.*, 198 Wis. 2d 195, 203, 542 N.W.2d 481 (Ct. App. 1995), we recognized that where a tortfeasor was covered by two policies with different liability limits, the injured person was entitled to UIM coverage even though only one of the tortfeasor's policies had liability limits less than that of the injured person's UIM coverage. We acknowledged that our decision meant that had the tortfeasor been covered only by the policy with liability limits greater than the injured person's UIM coverage, the injured person could not have recovered UIM benefits. *See id.* Instead, because the tortfeasor had an additional policy with liability limits less than the UIM coverage, the injured person could recover UIM benefits. *See id.* We concluded that such a result was "required by the language of the policy." *Id.*

¶ 35. Thus, when we concluded in *Hoglund* that the injured party's UIM coverage was illusory, what we were really holding was that the motorist was not getting much for his premium dollar, and that we would remedy that problem. We refused, however, to consider that despite UIM coverage's usual inapplicability, there was no premium for the coverage. *See Hoglund*, 176 Wis. 2d at 271 n.2. I conclude that *Hoglund* violates *Smith's* holding that where UIM coverage unambiguously excludes coverage, a court is to go no further. *Lossman* tells us the result is that *Hoglund* is without precedential value. In any event, *Hoglund* applies only to insurance policies with language simi-

lar to the policy in *Hoglund*. It cannot be applied where policy language is different.

¶ 36.  *Gifford* concluded that *Hoglund* governed its decision. *Gifford*, 178 Wis. 2d at 349. Accordingly, *Gifford* suffers from the same logical fault as *Hoglund*, and is also at variance with *Smith*. It too is without precedential value, for the same reason *Hoglund* is without precedential value.

¶ 37.  *Wood* is of lesser significance here because it involved reducing clauses in auto policies, an area we do not reach here. *Wood*, 148 Wis. 2d at 650. And *Wood* involved an ambiguous provision in an auto policy, another fact we do not face here. *Id.* at 652. *Wood*, however, does discuss the nature of UIM coverage. When reducing clauses are used in connection with UIM coverage, even if an unambiguous definition of "underinsured motorist" is used in an auto policy, the concept of policy limits does not fit the concept of UIM coverage with reducing clauses. One cannot ever recover the full policy limits of UIM coverage in an auto policy where some reducing clauses exist. Yet reducing clauses, like deductible provisions in property damage sections of auto policies, permit a motorist to lessen the cost of the policy by taking on some of the risk. They do so by making UIM coverage "last chance" coverage. Because *Wood* concludes that a reducing clause in the UIM provision of an auto policy is valid, *id.* at 651, this leaves open the possibility of drafting a policy which unambiguously contains a reducing clause yet still retains the concept of policy limits while accurately informing the motorist of the coverage purchased. And *Wood*, decided in 1989, must be read in light of statutory changes made by 1995 Wis. Act 21.

¶ 38.  I therefore conclude, as does the majority, that because each of the Taylors' American Family pol-

icies contained UIM coverage which was not greater than Hermanson's liability coverage limit, Hermanson was not an underinsured motorist, and the Taylors cannot recover under the UIM provision of their policies. In dicta, the majority concludes that had Hermanson had $25,000 of liability coverage and had both of the Taylors' policies had UIM coverage of $25,000, the Taylors could have recovered under their UIM coverages. I do not agree with this dicta, for the reasons I have previously given. The majority did not need to discuss the reducing clauses in the Taylors' policies, nor do I. And I need not discuss whether the Taylors are entitled to additional accidental death benefits, because I agree with the majority's discussion of that issue.

¶ 39.    Because I agree with the majority's conclusion, but disagree with some of its reasoning, I concur.